THE STATE OF OHIO, APPELLEE, *v.* SMITH, APPELLANT.

[Cite as State v. Smith (1976), 47 Ohio App. 2d 317.]

318

(No. 34426—Decided February 12, 1976.)

*Mr. John T. Corrigan,* for appellee.
*Mr. James D. London,* for appellant.

PARRINO, J. This is an appeal from the Court of Common Pleas wherein on January 9, 1975, defendant-appellant, Charles Smith, entered a plea of *nolo contendere* to a three-count indictment returned against him in Case No. Cr. 15532. The court accepted Mr. Smith's plea and found him guilty of the first and second counts of Aggravated Burglary, R. C. 2911.11, and Aggravated Robbery, R. C. 2911.01. The court dismissed the third count of the indictment, which had charged the defendant with Grand Theft, R. C. 2913.02.

The facts of this case indicate that the appellant was arrested and incarcerated on August 21, 1974. Appellant was thereafter indicted by the grand jury on September 12, 1974, for the aforementioned offenses. Pre-trials were conducted in this case on November 1st, 12th and 13th.

On Wednesday, November 20th, the case was reassigned to a judge sitting in the court by assignment and was set for trial on November 25th. The trial did not go forward on November 25th because the visiting judge was conducting another trial. The trial was then continued to November 26, 1975. Appellant filed a motion to dismiss on November 26th and a hearing thereon was scheduled for November 27th. On November 27th, however, the case was returned to the judge to whom it had been originally assigned. Thereafter, on December 17th, a hearing was had on the motion to dismiss. The motion to dismiss was denied on December 30th. The case was then assigned for trial on January 7, 1975, but it did not go forward on that day and the appellant did not enter his plea of no contest until January 9, 1975. Throughout the period extending from the date of his arrest on August 21, 1974, to the date of his plea on

January 9, 1975, appellant remained incarcerated in the county jail due to his inability to post bond.

In overruling appellant's motion to dismiss, the trial court stated that:

"* * * [T]he within action was not brought to trial within ninety days after the arrest of the defendant for the following reasons:

"(1) Counsel originally assigned to the within action was not available for trial or pre-trial on or about November 1, 1974, because he was engaged in a trial in another courtroom; that such situation constituted a delay necessitated by accused's lack of counsel (R. C. 2945.72(C)).

"(2) Counsel who appeared on behalf of the defendant at a pre-trial on November 1, 1974, and on November 12 and 13, 1974, neglected to advise the Court in accordance with the pre-trial and trial procedure followed by this Court, and known to counsel, that a plea would not be forthcoming; that had said counsel not so neglected to advise the Court, the case would have been brought to trial prior to the expiration of the said ninety day period (See O. R. C. 2945.72(D)).

"(3) The requirement that a defendant be brought to trial within the time specified in R. C. 2945.71(C) (2) and (D) is unconstitutional as being in conflict with the Supreme Court of Ohio, Superintendence Rule 8(B). (See Ohio Constitution Art. IV, Sec. 5(B).)"

After he was sentenced, appellant filed a timely notice of appeal on January 16, 1975. Appellant has presented the following assignment of error for review:

"The trial court erred in overruling the Motion to Dismiss since O. R. C. 2945.71 comports with Ohio Constitutional requirements and since all statutory prerequisites were fulfilled."

Upon our view of the record, we conclude that appellant's assignment of error is well taken. Accordingly, we hold that the judgment of the trial court is reversed and the appellant is discharged.

The first reason stated by the trial court in overruling the motion to dismiss was that:

"Counsel originally assigned to the within action was

not available for trial or pre-trial on or about November 1, 1974, because he was engaged in a trial in another court-room; that such situation constituted a delay necessitated by accused's lack of counsel (R. C. 2945.72(C))."

We note at the outset that the record fails to indicate that appellant's case had been set for *trial* on or about November 1, 1974. To the contrary, the record clearly indicates that the case was only set for pre-trial on November 1, 1974. Thus, the issue presented by the trial court's first stated reason is whether assigned counsel's unavailability for a pre-trial hearing constituted "any period of delay necessitated by the accused's lack of counsel" (R. C. 2945.72(C)), when the assigned counsel's unavailability for the pre-trial was due to his being engaged in another trial and when substitute counsel appeared at the pre-trial on behalf of the accused and in place of the accused's assigned counsel.

R. C. 2945.72(C) provides that the time within which one accused of a felony must be brought to trial may be extended by:

"Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in assigning counsel to an indigent accused upon his request as required by law."

It is well settled that if interpretation or construction of a statute becomes necessary, a court must look to the language of the statute itself in attempting to ascertain the legislative intent. *Stewart* v. *Trumbull County Bd. of Elections* (1973), 34 Ohio St. 2d 129; *Provident Bank* v. *Wood* (1973), 36 Ohio St. 2d 101. Furthermore, in examining the actual language of a statute, it is settled that the words should be given their common, ordinary and accepted meaning unless the legislature has expressed a contrary intention. *Youngstown Club* v. *Porterfield* (1970) 21 Ohio St. 2d 83; *Watson* v. *Doolittle* (1967), 10 Ohio App. 2d 143. A construction should be avoided which is contrary to the general spirit of the statute. *Irwin* v. *Bank of Bellefontaine* (1856), 6 Ohio St. 81.

In conjunction with the above-mentioned principles of statutory construction, the legislative history contained in

the "Proposed Ohio Criminal Code" provides some assistance in interpreting R. C. 2945.72. The "Proposed Ohio Criminal Code" report, which was published in March, 1971, indicates that the reasons for which the time for trial could be extended were spelled out in detail by the legislature "* * * in an attempt to provide stricter controls over delays." "Proposed Ohio Criminal Code" at 312. In discussing those delays which would extend the time provisions of R. C. 2945.71, the report states that:

"These include delays occasioned by * * * the necessity for *procuring* defense counsel." Page 313. (Emphasis added.)

A second source of legislative history is contained in the Ohio Legislative Service Commission's final summary of Amended Substitute H. B. 511. This second report, which was published in June, 1973, notes that when one of the extensions of R. C. 2945.72 applies "* * * the applicable time limit is not tolled absolutely, but merely extended by the time necessary in light of the reason for the delay." Summary of Am. Sub. H. B. 511 at page 71.

In view of the legislative history noted above and upon considering the common, ordinary, and accepted meaning of the words used in R. C. 2945.72(C), we conclude that there was no "delay necessitated by the accused's lack of counsel" in the present case.

The facts indicate that the appellant never *lacked* counsel. The Public Defender's Office represented the appellant from the preliminary hearing through the hearing of January 9, 1975. The Public Defender's Office appeared on appellant's behalf at the pre-trials held on November 1st, 12th, and 13th of 1974. We hold that the appearance of substituted counsel at the pre-trial of November 1, 1974, did not constitute "lack of counsel" within the meaning of R. C. 2945.72(C). The record indicates that the public defender assigned to appellant's case was engaged in another matter on November 1, 1974, and that another public defender, Mr. Gannon, appeared in his place. Mr. Gannon appeared at the pre-trial having full authority to dispose of the case in an appropriate manner. The record indicates that

322

Gannon appeared to pre-try the appellant's case and that in so doing did obtain discovery from the state in compliance with Smith's prior request. Although it is clear that Smith was represented by counsel at the November 1st pretrial, the trial court apparently felt that Gannon's actions at that hearing indicated that Gannon was not Smith's counsel. We note that, although there are conflicting versions as to the *result* of the November 1st pre-trial, the fact remains that the appellant was represented by counsel and there was no "delay necessitated by the accused's lack of counsel." Thus, the trial court erred in holding that the nonavailability of assigned counsel at the November 1st pre-trial constituted a delay necessitated by the accused's lack of counsel.

Assuming, *arguendo,* that the trial court's position with respect to R. C. 2945.72(C) was correct, we nevertheless conclude that the appellant's trial on January 9, 1975, was still not timely and that he should have been discharged. Any delay caused by the accused's lack of counsel at the November 1st pre-trial would have only extended the speedy trial time for a period of time equal to the time of delay. Thus, under this analysis, appellant should have been tried by December 1, 1974.[1]

Assuming further that the November 26th motion to dismiss *did* stop the running of speedy trial time, the appellant should nevertheless have been tried by January 6, 1975.[2]

---

[1] Appellant was arrested on felony charges and incarcerated on August 21, 1974. Appellant remained incarcerated because of his inability to post bond and, thus, should have been tried within ninety (90) days after his arrest—i. e., by November 19, 1974. If the trial court's position was correct, the delay which occurred was for eleven (11) days and speedy trial time began running again when Mr. Gorman appeared at the November 12th pretrial. Seventy-one (71) of the ninety (90) days had run as of November 1, 1974. The December 1st date is reached by adding the remaining nineteen (19) speedy trial days to the date when the period of delay ended (November 12, 1974).

[2] If the filing of the motion to discharge stopped the running of the speedy trial time, the appellant should have been brought to trial within five (5) days after the motion was ruled upon, since at the time the motion to dismiss was filed, eighty-five (85) of the ninety (90) days had

The second reason given by the court in denying appellant's motion to discharge was that:

"Counsel who appeared on behalf of the defendant at a pre-trial on November 1, 1974, and on November 12 and 13, 1974, neglected to advise the Court in accordance with the pre-trial and trial procedure followed by this Court, and known to counsel, that a plea would not be forthcoming; that had said counsel not so neglected to advise the Court, the case would have been brought to trial prior to the expiration of the said ninety day period (See O. R. C. 2945.72 (D))."

This holding raises the issue of whether the failure of defense counsel, following a pre-trial, to advise the court that a plea would not be forthcoming constitutes a "period of delay occasioned by the neglect or improper act of the accused" within the meaning of R. C. 2945.72(D), so as to extend the time within which one imprisoned on felony charges is required to be brought to trial.

We note that the trial court's holding on this point appears to contradict the court's own explanation of its pre-trial procedures (R. 6). Assuming that defense counsel did fail to inform the court that a plea would not be forthcoming, then, according to the court's own statement, it should have had notice that no plea was forthcoming and the case should have been set for trial not later than November 10, 1974 (R. 6).

We agree with appellant that the court's holding on this second point implies that an accused must demand a trial prior to the expiration of the statutory time limits. Such an implication is clearly improper because the demand requirement was specifically rejected in *State* v. *Cross* (1971), 26 Ohio St. 2d 270. Notwithstanding the amendments to the speedy trial statutes effective January 1, 1974, we conclude that *State* v. *Cross, supra,* still controls on the

passed (August—10 days; September—30 days; October—31 days; November—14 days; *i. e.,* November 12th-November 26th). Appellant should thus have been brought to trial by Monday, January 6, 1975, because the motion was overruled on December 30, 1974, and the fifth day following that date was a Saturday. Crim. R. 45(A).

issue of whether an accused must demand a speedy trial. *See State* v. *Pudlock* (1975), 44 Ohio St. 2d 104. We hold, therefore, that it is the mandatory duty of the state to try the accused within the time prescribed by R. C. 2945.71 and R. C. 2945.73. *State* v. *Gray* (1964), 1 Ohio St. 2d 21; *State* v. *Cross* (1971), 26 Ohio St. 2d 270; *State* v. *Pudlock, supra.* The failure of defense counsel to indicate to the trial court that a guilty plea would not be forthcoming does not constitute a period of delay occasioned by the neglect or improper act of the accused as provided in R. C. 2945.72(D).

The third reason given by the trial court in denying appellant's motion to dismiss was stated as follows:

"The requirement that a defendant be brought to trial within the time specified in R. C. 2945.71(C)(2) and (D) is unconstitutional as being in conflict with the Supreme Court of Ohio, Superintendence Rule 8(B). (See Ohio Constitution Art. IV, Sec. 5(B).)"

Implicit in the court's holding on this point was a finding that the Rules of Superintendence of the Supreme Court of Ohio were promulgated as rules of practice and procedure pursuant to Section 5(B), Article IV of the Ohio Constitution and, therefore, R. C. 2945.71(C)(2) and (D) were unconstitutional because the time provisions of those sections conflicted with Sup. R. 8(B).

However, upon closer analysis of Section 5, Article IV of the Ohio Constitution, we conclude that the trial court's holding on this point was erroneous.

Section 5, Article IV of the Ohio Constitution, provides the Ohio Supreme Court with rule-making power. In its entirety, this constitutional provision reads as follows:

"(A) (1) *In addition to all other powers vested by this article in the supreme court, the supreme court shall have general superintendence over all courts in the state. Such general superintending power shall be exercised by the chief justice in accordance with rules promulgated by the supreme court.*

"(2) The supreme court shall appoint an administrative director who shall assist the chief justice and who shall serve at the pleasure of the court. The compensation and

duties of the administrative director shall be determined by the court.

"(3) The chief justice or acting chief justice, as necessity arises, shall assign any judge of a court of common pleas temporarily to sit or hold court on any other court of common pleas or any court of appeals or shall assign any judge of a court of appeals temporarily to sit or hold court on any other court of appeals or any court of common pleas and upon such assignment said judge shall serve in such assigned capacity until the termination of the assignment. Rules may be adopted to provide for the temporary assignment of judges to sit and hold court in any court established by law.

"(B) *The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right.* Proposed rules shall be filed by the court, not later than the fifteenth day of January, with the clerk of each house of the general assembly during a regular session thereof, and amendments to any such proposed rules may be so filed not later than the first day of May in that session. Such rules shall take effect on the following first day of July, unless prior to such day the general assembly adopts a concurrent resolution of disapproval. *All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.*

"Courts may adopt additional rules concerning local practice in their respective courts which are not inconsistent with the rules promulgated by the supreme court. The supreme court may make rules to require uniform record keeping for all courts of the state, and shall make rules governing the admission to the practice of law and discipline of persons so admitted.

"(C) The chief justice of the supreme court or any judge of that court designated by him shall pass upon the disqualification of any judge of the courts of appeals or courts of common pleas. Rules may be adopted to provide for the hearing of disqualification matters involving judges of courts established by law." (Emphasis added.)

The Supreme Court of Ohio Rules of Superintendence, applicable to all Courts of Common Pleas in this state, became effective on September 30, 1971. The stated purpose of these rules is contained in Sup. R. 1(A), which provides:

"A. *Statement of Purpose. Section 5(A)(1) of Article IV of the Ohio Constitution reads as follows:*

" In addition to all other powers vested by this article in the supreme court, the supreme court shall have general superintendence over all courts in the state. Such general superintending power shall be exercised by the chief justice in accordance with rules promulgated by the supreme court.

"Caseloads in all our courts are increasing so fast that it is becoming difficult to provide criminal defendants with the speedy trial guaranteed them by the Constitution of the United States and the Ohio Constitution. In an attempt to bring criminal cases to trial promptly, it appears that more judges are being assigned to the criminal branches of our larger metropolitan courts. One direct result of this practice is to increase further the number of civil cases pending in many of these courts.

"Delay in both criminal and civil cases in the trial courts of Ohio is presently the most serious problem in the administration of justice in this state. It is to be remembered that the courts are created not for the convenience or benefit of the judges and lawyers, but to serve the litigants and the interests of the public at large. When cases are unnecessarily delayed, the confidence of all people in the judicial system suffers. The confidence of the people in the ability of our system of government to achieve liberty and justice under law for all is the foundation upon which the American system of government is built.

"The following rules are designed (1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before the courts." (Emphasis added.)

As noted in Sup. R. 1(A), the Rules of Superintendence were promulgated by the Ohio Supreme Court pursuant to the authority vested in the court by Section 5(A)(1), Article IV of the Ohio Constitution.[3] The very name and substance of these rules indicates that they were intended as an administrative directive from the Supreme Court to all the Courts of Common Pleas of this state, and the individual judges thereof, succinctly setting forth procedures designed to more clearly define judicial duties and responsibilities and to provide for more uniform and effective methods of general court administration. The Rules of Superintendence were not intended to function as rules of practice and procedure.

Sup. R. 8(B) provides:

"All criminal cases shall be tried within six months of the date of arraignment on an indictment or information.

"Any failure, and the reason therefor, to comply with the time limits specified in this rule shall be reported immediately to the Chief Justice of the Supreme Court by the administrative judge of the division in which such failure occurs. In a single-judge division such failure shall be reported by the judge. The Chief Justice is authorized to take such action as may be necessary to cause any such delinquent case to be tried forthwith."

The trial court declared that the period of time specified in Sup. R. 8(B) conflicted with the time provisions of R. C. 2945.71, which provides, in part:

"(C) A person against whom a charge of felony is pending:

"(1) Shall be accorded a preliminary hearing within fifteen days after his arrest;

"(2) Shall be brought to trial within two hundred seventy days after his arrest.

"(D) For purposes of computing time under divisions (A), (B), and (C) of this section, each day during which

---

[3]The Rules of Superintendence for Municipal Courts and County Courts, which became effective January 1, 1975, were also promulgated by the Ohio Supreme Court pursuant to the authority vested by Article IV, Section 5(A)(1) of the Ohio Constitution. M. C. Sup. R. 1(B).

the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."

Upon noting the claimed conflict with Section 5(B), Article IV of the Ohio Constitution, the trial court held these code sections unconstitutional. The holding of the trial court was clearly erroneous because the Rules of Superintendence were promulgated under the authority of Section 5(A)(1), Article IV, and not under Section 5(B), Article IV of the Ohio Constitution. Thus, the language contained in Section 5(B), Article IV of the Ohio Constitution, which provides that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect," applies only to rules of practice and procedure proposed by the Supreme Court of Ohio and approved by the General Assembly. Accordingly, we hold that R. C. 2945.71(C) and (D) are not unconstitutional for the reason stated by the court below because the conflict provision referred to in Section 5(B), Article IV of the Ohio Constitution is applicable to rules of practice and procedure and is not applicable to Sup. R. 8(B).

It is the further holding of this court that R. C. 2945.71 is a constitutional enactment which prescribes the time within which criminal cases must be brought to trial and that Sup. R. 8(B) does not conflict with such statute, but rather complements its function and works in harmony therewith.[4]

Appellant's convictions for aggravated burglary and aggravated robbery, entered upon his plea of *nolo contendere*, are reversed and appellant is discharged as provided in R. C. 2945.73(B).

*Judgment reversed.*

KRENZLER, C. J., and MANOS, J., concur.

---

[4]The complementary function of the Rules of Superintendence is further exemplified by Rule 5(A) of the Supreme Court of Ohio Rules of Superintendence for Municipal and County Courts which provides that "[a]ll criminal trials shall be tried within the time provided in R. C. Chapter 2945."

KRENZLER, C. J., concurring. I concur in the judgment of reversal and will make the following additional comments regarding the relationship as to the speedy trial issue between the Rules of Superintendence, the Criminal Rules of Practice and Procedure and legislative enactments.

The Rules of Superintendence are adopted by the Ohio Supreme Court but are not submitted to the legislature for approval or disapproval. Section 5(A), Article IV, Ohio Constitution. Also, Section 5(A), Article IV makes no provision regarding any conflict between Rules of Superintendence and laws.

The Criminal Rules of Practice and Procedure are adopted by the Ohio Supreme Court and submitted to the legislature for approval or disapproval. All laws in conflict with the rules of practice and procedure shall be of no further force and effect after such rules of practice and procedure have taken effect. Section 5(B), Article IV, Ohio Constitution.

It is noted that there is reference to speedy trial in Sup. R. 8(B) and in R. C. 2945.71—R. C. 2945.73, but there is no reference to the speedy trial issue contained in the adopted Rules of Criminal Practice and Procedure.

Because of the language in Sections 5(A) and 5(B), Article IV, it is my view that the Rules of Superintendence are merely directory in nature and guidelines for the conduct of the courts emanating from the Supreme Court. They do not have the same legal standing as the Rules of Practice and Procedure, which must be presented to the legislature and have the effect of law, nor do they have the same standing as legislative enactments. The Rules of Superintendence are neither the substantive nor procedural law of Ohio.

As a matter of law, there can be no conflict between a Rule of Superintendence and a statute such as the one regarding speedy trial, R. C. 2945.71—R. C. 2945.73, because the statute is the law and the rule is not the law.

As to the speedy trial issue, R. C. 2945.71—R. C. 2945.73 governs.