THE STATE, EX REL. KRAKOWSKI, CLERK, *v.* STOKES, ADMINISTRATIVE AND PRESIDING JUDGE.

*Messrs. Squire, Sanders & Dempsey, Mr. Daniel J. O'Loughlin, Mr. Frederick R. Nance, Mr. Richard Gurbst* and *Mr. Stephen Walker,* for relator.

*Mr. James R. Willis,* for respondent.

CORRIGAN, C.J. Relator, Jerome F. Krakowski, Clerk of the Cleveland Municipal Court, prays that a writ of prohibition be issued against respondent, Judge Carl B. Stokes, prohibiting him from enforcing Administrative

Orders Nos. 4, 5 and 6 issued by him to relator, and from issuing any further administrative orders to the elected Clerk of the Cleveland Municipal Court without the concurrence of a majority of the judges of the Cleveland Municipal Court.

After being cited for contempt by the respondent, the relator filed a complaint for writ of prohibition, an application for alternative writ of prohibition and an alternative writ of prohibition on May 25, 1984. On June 5, 1984, respondent filed a motion to dismiss with a memorandum in support of the motion to dismiss. This court issued an order allowing alternative writ of prohibition on June 6. On June 7, relator filed a memorandum in opposition to motion to dismiss, to which respondent responded with a reply to relator's brief in opposition on June 12.

The motion to dismiss the complaint was overruled and the respondent was prohibited from enforcing the administrative orders or issuing new orders to the clerk of the municipal court without a majority vote of the judges of said court until final disposition of the instant case. The temporary order issued by the court of appeals was limited only to any individual action by Judge Stokes. On June 25, respondent filed an answer to the complaint for writ of prohibition. On June 28, the parties filed stipulations. Relator filed a motion to substitute certified copies of exhibits on July 2, 1984.

On or about May 1, 1984, respondent issued Administrative Orders Nos. 4 and 5 to relator. In Administrative Order No. 4, respondent ordered relator to provide him with the following information: The identity of the judge(s) who allegedly intimidated two chief deputy clerks, the exact form of that intimidation and the identity of those clerks. Respondent also demanded information relating to the number of clerical bail-bond errors committed by his staff over the last twelve months, the corrective measures employed by relator and the identity of each person on his staff who had been cited for contempt of court for mistaken issuance of bail bond.

In Administrative Order No. 5, respondent ordered relator to provide him with the following information relating to respondent's personal criminal docket for Thursday, April 26, 1984: The identity of the clerk(s) responsible for compiling the criminal case files for that day, the manner in which the files were maintained, a specific detailed account of the efforts made by the clerk's office to locate the missing files and a detailed accounting as to where the files were eventually found.

On or about May 8, 1984, respondent issued Administrative Order No. 6 in which he stated that misplaced and/or lost criminal files have posed problems for the Cleveland Municipal Court for a long period of time. In this order, Judge Stokes ordered relator to:

(1) discontinue the practice of substituting an informational card for missing criminal files which have been docketed for hearing;

(2) conduct and prepare a study of the alternative feasibility of the maintenance of duplicate criminal files;

(3) present a report to respondent of this study within ninety days from the date of the order;

(4) fully reconstruct all docketed criminal files which he finds to have been misplaced, and in those cases where such a reconstruction is impossible, he shall submit a report detailing his efforts to reconstruct such files and the reasons why he was unable to do so; and

(5) compile and transmit to the administrative judge a monthly report which shall list all the criminal files which his office has reported missing during the preceding thirty days and whether or not and by whom the file was located.

The issue in this case is whether respondent, as Administrative and

Presiding Judge of the Cleveland Municipal Court, had the sole authority to order relator Jerome F. Krakowski, as Clerk of the Cleveland Municipal Court, to comply with these orders, or, as relator contends, respondent did not have this authority in that such action required a concurrence of a majority of the judges of the Cleveland Municipal Court. The parties have stipulated to the fact that at no meeting of the judges of the Cleveland Municipal Court did the judges of that court vote to approve or disapprove Administrative Orders Nos. 4, 5, and 6.

In reaching a decision as to whether or not a writ of prohibition should issue in this case, this court must consider the action of the respondent as well as the content of the administrative orders in order to make a determination of any unauthorized exercise of judicial power.

The applicable statute in this case, R.C. 1901.16, provides in relevant part:

"(B) Any order made by the presiding judge under the special powers conferred upon him may be vacated, amended, or modified by the vote of a majority of the judges of the court.

"(C) The administrative authority vested in judges constituting a municipal court shall be exercised by a majority vote of such judges, including the presiding judge."

The statute, however, is not the only provision dealing with the administration of the court. M.C. Sup. R. 2 provides that in every multi-judge court, the judges, by a majority vote, shall elect one of their number as administrative judge. The rule also describes the powers and duties of the administrative judge as follows:

"(B) Powers. The administrative judge shall have full control over the administration, docket and calendar of the court. He shall exercise the powers conferred upon him by these rules and the powers vested by statute in the pre-siding judge. In courts where a judge is elected 'chief justice' pursuant to R.C. § 1901.09, such judge may be elected as administrative judge. A 'chief justice' who is not the administrative judge shall exercise only those statutory powers not in conflict with the supervisory power of the administrative judge.

"The acts of the administrative judge may not be vacated, amended or modified by the vote of a majority of the judges of the court.

"(C) Duties. The administrative judge shall be responsible to the Chief Justice of the Supreme Court in the discharge of his duties and shall:

"(1) Have full responsibility for the administration, docket and calendar of the court;

"(2) Cause cases to be assigned to individual judges and to particular sessions pursuant to these rules;

"(3) Require timely and accurate reports from each judge concerning individually assigned cases;

"(4) Require timely and accurate reports from judges and court personnel concerning particular session cases;

"(5) Timely make all administrative judge reports;

"(6) Formulate accounting and audit systems within the court and in the clerk's office which insure the accuracy and completeness of all reports required by these rules;

"(7) Meet with the clerk on a monthly basis to discuss the implementation of these rules;

"(8) Maintain records indicating the number of pending cases which individual attorneys are designated to try;

"(9) Perform such other duties as are required by these rules or the Chief Justice of the Supreme Court."

The conditions which must exist to support the issuance of a writ of prohibition are: the court or officer against whom it is sought must be about to exercise judicial or quasi-judicial power; the exercise of such power must be unautho-

rized by law; and it must appear that the refusal of the writ would result in injury for which there is no other adequate remedy in the ordinary course of the law. *State, ex rel. McKee,* v. *Cooper* (1974), 40 Ohio St. 2d 65 [69 O.O.2d 396].

It is clear that the first and third conditions for the issuance of the writ have been met. Respondent has exercised his judicial power in attempting to order relator to comply with the administrative orders. Relator has no other adequate remedy at law.

Whether respondent's actions are unauthorized by law requires examination. Relator relies heavily on R.C. 1901.16(C) which states that the "administrative authority" shall be exercised by a majority vote of the judges. *Mahoning County Bar Assn.* v. *Franko* (1958), 168 Ohio St. 17 [5 O.O.2d 282]. That court, in essence, stated that the presiding judge has a prima-facie duty to assume responsibility for such administration and his acts are subject to the approval of the majority of the judges. M.C. Sup. R. 2 states that the administrative judge has full control over the administration, docket and calendar of the court. In addition, "[t]he acts of the administrative judge may not be vacated, amended or modified by the vote of a majority of the judges of the Court."

R.C. 1901.16 provides that the administrative authority shall be exercised by a majority of the judges and also that orders of the presiding judge may be vacated, amended, or modified by a majority vote of the judges. M.C. Sup. R. 2, in contrast, provides that the majority may not vacate, amend or modify any act of the administrative judge. Respondent happens to be both presiding and administrative judge. Assuming that the "administrative authority" referred to in the statute and the treatment of "administration" in the rule are one and the same, the statute and the rule obviously

conflict. Local Rule 1.03 of the Cleveland Municipal Court only adds to the confusion.

In this instance, we find the statute must take precedence over the rule. M.C. Sup. R. 1(B) provides that "[t]hese rules are promulgated pursuant to Section 5(A)(1) of Article IV of the Constitution of Ohio." Section 5(B) of Article IV states that, "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Section 5(A)(1), however, does not have such a provision. The court of appeals in *State* v. *Lacy* (1975), 46 Ohio App. 2d 215, 217 [75 O.O.2d 376], held that paragraph (A)(1) of Section 5, Article IV, of the Ohio Constitution is independent of paragraph (B) and that the Ohio Supreme Court Rules of Superintendence do not invalidate any existing statute. In addition, the court of appeals in *State* v. *Smith* (1976), 47 Ohio App. 2d 317, 328 [1 O.O.3d 385] stated that the Rules of Superintendence were promulgated under the authority of Section 5(A)(1), Article IV, and not under Section 5(B), Article IV of the Ohio Constitution. The court also stated at 328:

"Thus, the language contained in Section 5(B), Article IV of the Ohio Constitution, which provides that '[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect,' applies only to rules of practice and procedure proposed by the Supreme Court of Ohio and approved by the General Assembly."

Under Administrative Orders Nos. 4 and 5 the respondent was acting actually in his individual capacity in a matter arising out of a problem regarding files not delivered to his courtroom. However well-intended his attempt to broaden his investigation into a full-scale probe of the operation of the clerk's office, such a step called for a cool-headed procedure and a considered and joint action by the full court or, at least, a majority of the judges.

Such action by the respondent was unreasonable and arbitrary and certainly was never contemplated nor authorized by the pertinent statutes, or the Superintendence Rules, for that matter. The legislative framers of the statutes and the Supreme Court in promulgating the Rules of Superintendence could not have envisaged the form of action taken by the respondent. The exercise of precipitous and unbridled power is the antithesis of effective judicial leadership. One can point to the wisdom of R.C. 1901.16(C) in vesting *the* administrative authority in a majority of the judges.

On the other hand the efficient administration of justice in a busy multi-judge municipal court does require the adoption of rules and procedures intended to accomplish that desired result. One judge must be in charge to handle the ordinary administrative details for the court. One likewise can see the wisdom of the Supreme Court in promulgating these Rules of Superintendence. In other words, the inevitable question becomes: "Need the presiding and administrative judge of the court seek a majority vote on every conceivable administrative matter?" The answer is obvious.

It is rather incongruous to call him "the Clerk of the Municipal Court," responsible for all the clerical functions in the court, but then to infer, as the relator does, that he is totally independent of the judges in the operation of his office. As the clerk, the relator must be answerable to the judges of the Cleveland Municipal Court and even is subject to contempt proceedings, if the situation warrants such drastic action. However, resort to the exercise of contempt powers should be the last weapon in the judicial arsenal to be used, especially in matters involving other elected public officials.

It cannot be denied that, despite the fact that the clerk of courts is a separately elected official, the nature of his duties so closely connects him with the court, and especially the administrative judge, that the administrative judge must have a certain amount of control over the clerk. R.C. 1901.31(E) provides that the clerk "shall file and safely keep all journals, records, books, and papers belonging or appertaining to the court, record its proceedings, *perform* all other duties that the judges of the court may prescribe * * *." (Emphasis added.) The administrative judge has full control over the administration, docket and calendar of the court pursuant to M.C. Sup. R. 2, for which he is responsible to the Chief Justice of the Ohio Supreme Court.

The administrative judge and the clerk of court should work together in order that each may efficiently carry out his duties. M.C. Sup. R. 2 contemplates such a relationship. Section (C) spells out the duties of the administrative judge. One of his duties is to "(7) [m]eet with the clerk on a monthly basis to discuss the implementation of these rules." The relator and the respondent should rise above their differences, however engendered, and should be motivated to follow the spirit of the rule in the interest of the public.

Due to the interrelationship of the duties imposed upon the administrative judge and the clerk, it is not reasonable to subject minor administrative matters to a majority vote of the judges. However, the fact that there may be occasions in which it is not necessary to obtain a majority vote of the judges does not give any judge license to make unreasonable demands upon the clerk.

In the instant case respondent failed to secure the approval of a majority of the judges, thus rendering the orders unenforceable. In electing him to the position of presiding and administrative judge, his fellow judges did not abandon their legal duties and responsibilities and thereby delegate to him unre-

stricted carte blanche authority. Even if we were to conclude that the respondent had the authority to issue the orders, the manner in which he acted could be construed as unreasonable and an abuse of discretion.

In Administrative Order No. 4, respondent ordered information relating to the letter dated April 30, 1984 written by relator. He also ordered extensive information relating to bail-bond errors, corrective measures employed by the clerk to correct such errors (both over the last twelve months) and the identity of members of the clerk's staff who had been cited for contempt of court for mistaken issuance of a bail-bond. This information was ordered to be delivered to respondent within twenty-four hours. This was clearly an unreasonable demand in light of the nature of the information ordered.

The same holds true for Administrative Order No. 5, also issued May 1, 1984. In this order, respondent ordered detailed information relating to his personal criminal docket for Thursday, April 26, 1984. Again, this information was ordered to be delivered to respondent within twenty-four hours. Although this court finds that respondent had the right to request such information, the fact that he ordered it to be delivered to him within twenty-four hours was unreasonable.

With respect to Administrative Order No. 6, this court finds that the nature of the items ordered clearly mandated a majority vote of the judges. Relator was ordered to: (1) conduct and prepare a study of the alternative feasibility of the maintenance of duplicate criminal files through photocopy, microfilm or microfiche, (2) present a report on the findings of this study, (3) fully reconstruct all docketed criminal files and in those cases where impossible to do so, prepare a report which shall detail his efforts to reconstruct such files, (4) prepare a monthly report which shall list all of the criminal files which are missing, if and when such files were located and where and by whom the file was found.

The nature of these orders was far more than merely incidental administrative details, in that the orders sought to impose substantial additional duties upon the clerk. A majority vote of the judges should be required in effectuating such changes in the operation of the office.

The decision of this court is to issue a writ of prohibition which prevents the enforcement of Administrative Orders Nos. 4, 5 and 6, as originally presented. As to the remaining prohibition sought against the issuance "of any further administrative orders" by the respondent, we are unwilling to authorize such broad restraint. Nor do we have authority to do so. Each order must be tested in light of its provisions to determine if it were issued for the purpose of implementing and expediting the ordinary administrative duties of the court.

Writ of prohibition is issued consistent with this opinion.

*Writ allowed.*

PRYATEL and JACKSON, JJ., concur.

JACKSON, J., concurring. I concur in the decision of the majority which finds that the administrative orders issued by respondent Judge Stokes to relator Municipal Court Clerk Jerome Krakowski are not enforceable, and that a writ of prohibition should issue to prohibit their enforcement.

I further concur in the determination of the majority: (1) that Judge Stokes, as the *presiding judge* of the municipal court, acting with the concurrence of the majority of the judges of the court, may exercise the administrative authority of the court pursuant to R.C. 1901.16; and (2) that Judge Stokes, as the *administrative judge,* in which

capacity he is authorized by rule to act alone, is far more limited in authority, despite the expansive language of M.C. Sup. R. 2, conferring upon the administrative judge "the powers vested by statute in the presiding judge."

My concurrence, however, is influenced by the principles established by the Ohio Supreme Court in *State, ex rel. Heeter,* v. *Mullenhour* (1977), 51 Ohio St. 2d 145 [5 O.O.3d 117]. The issue in the *Heeter* case was whether the *presiding judge* or the *administrative judge* of a two-judge municipal court had the authority to set the salaries of court employees. The Supreme Court held that this authority was vested in the *presiding judge.* With respect to the authority of the *administrative judge,* the court stated at 147-148:

"The powers provided the administrative judge are based on the Rules of Superintendence for Municipal Courts and County Courts. *These rules chiefly involve directives concerning matters affecting case control and case disposition in the municipal and county courts of Ohio,* and do not involve matters concerning the fiscal duties and responsibilities of those courts. *Because these rules, from which the administrative judge derives authority, are so limited in purpose and effect, it follows that the extent of the powers provided the administrative judge under M.C. Sup. R. 2(B) are also so limited.* Thus, we hold that in the present situation, where the administrative judge shares the bench with one other judge who serves as the presiding judge, only the presiding judge has the authority to set salary levels for the deputy bailiffs." (Emphasis added.)

The orders of Judge Stokes in the case at bar extend beyond case control and disposition referred to in *Heeter,* and instead purport to mandate the relator to conduct investigations and dramatically alter the present record-keeping practices of the office of the Clerk of the Cleveland Municipal Court.

Whether these reforms are necessary or desirable is not a matter for consideration in this complaint by relator for a writ of prohibition. However, it is clear from the ruling in the *Heeter* case that the. *administrative judge,* acting without the concurrence of the majority of the judges of the municipal court, lacks authority to enforce these orders.

Moreover, it appears that the enforcement of two of these orders by means of the contempt process will be foreclosed in the regular course of law. Respondent filed a petition in the Cleveland Municipal Court requesting that relator be held in contempt for failure to obey Administrative Orders Nos. 4 and 5. On June 20, 1984, the respondent's complaint was dismissed[1] by Judge William F. Brown.[2] This dismissal, however, does not moot the issues raised in the case at bar, because of the apparent intention of respondent to enforce Administrative Order No. 6, and because respondent could possibly seek enforcement of Administrative Orders Nos. 4 and 5 by means of a petition in mandamus.

For the foregoing reasons, I concur.

---

[1] As of July 10, 1984, respondent has not appealed this decision.

[2] Judge William F. Brown, of the Coshocton County Court, was assigned by the Ohio Supreme Court to preside over the hearing in this matter.