[Cite as *State v. Ventura*, 2016-Ohio-5151.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150495 |
| | | TRIAL NO. C-15CRB-10273 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| COREY VENTURA, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed in Part and Sentence Vacated

Date of Judgment Entry on Appeal: July 29, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender*, Demetra Stamatakos* and *Joshua A. Thompson*, Assistant Public Defenders*,* for Defendant-Appellant.

**FISCHER, Presiding Judge.**

{¶1}    Defendant-appellant Corey Ventura was convicted following a bench trial of one count of domestic violence, a first-degree misdemeanor, in violation of R.C. 2919.25(A).   In this appeal, Ventura challenges the weight of the evidence adduced to support his conviction and the trial court's delay in imposing his sentence.   We conclude Ventura's conviction was supported by the weight of the evidence, and therefore, affirm the trial court's finding of guilt.  However, because we determine the trial court unnecessarily delayed the imposition of Ventura's sentence, we conclude the trial court could not sentence him, and therefore, we vacate his sentence.  We, hold, however, that Ventura's conviction shall remain as part of his record.

### May 15, 2015 Bench Trial

{¶2}    On April 27, 2015, Ventura was arrested and charged with one count of domestic violence.  On May 15, 2015, his case proceeded to trial before the court.  At the bench trial, the state presented testimony from Ventura's wife of three years, Savanna, and Cincinnati police officer William Sume.  Ventura testified in his own defense.

{¶3}    Savanna testified that on April 27, 2015, she and Ventura had been arguing in their home about Ventura attending the birth of her sister's baby at the hospital.  While Ventura wanted to go to the hospital to support his best friend, the soon-to-be father, Savanna insisted that her sister's family did not want Ventura there, and he should stay home.  The argument escalated with Ventura and Savanna screaming at one another in their living room.  Ventura then walked briskly towards Savanna with his fists balled up and his right hand up.  Savanna was terrified that Ventura was going to hit her, so she put her hands up and said, "Please don't hit me."

2

Ventura told Savanna he would not hit her and he lowered his right hand. When Savanna lowered her hands, Ventura punched her on the left side of her head. Savanna testified that it hurt and her head was sore for some time thereafter.

{¶4} Ventura then threw a fan in the direction of the kitchen, and walked out of the front door, slamming it so hard that the glass broke. He left in his truck. Savanna called her mother and told her that Ventura was headed to the hospital. When Savanna heard Ventura return to their home several minutes later, she hid her cell phone so that Ventura would not know she had called her mother. Ventura, however, had already learned of their conversation, and he and Savanna began arguing again.

{¶5} Savanna had been holding their two-year-old daughter. Ventura removed her from Savanna's arms and put her in her bedroom to watch television. He then grabbed Savanna by her shirt and dragged her to their bedroom where he threw her on their bed. He held her down on the bed with his left hand. In his right hand, he had a pocket knife with a two-inch blade, which he positioned over her. He said, "You want to call people and tell them I am an abusive husband – well here I am." At that point, the couple's daughter walked into the room and Ventura stopped. He let go of Savanna and backed away towards the bedroom closet. He grabbed Savanna's clothes, threw them out of the closet, and told Savanna to get out of their house.

{¶6} Savanna picked up their daughter, walked to the other side of the bed, and called the police. When she told Ventura she was calling the police, he put the pocket knife's blade to his arm. He told Savanna to hang up, to put their daughter in a different room, and to watch what she had done. Savannah testified that she was terrified that Ventura was going to hurt himself. She did not want him to die, so she

told Ventura she wasn't going anywhere and she moved towards him to try to get the knife away from him.

{¶7}     Ventura ran into the bathroom and locked the door.  Savanna told Ventura not to hurt himself. Then she called for emergency assistance and relayed what had happened.  While Savanna was on the phone, Ventura came out of the bathroom. He told Savanna she needed to tell them that she had lied.  Savanna told Ventura that she was not lying and he needed to get help.  He replied, "No one is going to help me with this," and pointed to a two-inch cut on his arm that was bleeding.  Savanna then said, "You've already hit me once and it's just going to keep happening."  Ventura then apologized for hitting her, but he told her that he could not go to jail or he would lose his job.  Ventura then called someone on his cell phone.  He told this person that he had hit Savanna, he was going to jail, and he would call when he made bail.  After he hung up, Savanna told Ventura that she loved him and wanted him to get help. Ventura stated that he knew she loved him, and he loved her, but he hated himself and "when he got out, he was going to finish it."  He then kissed their daughter and walked outside to meet the police.

{¶8}     Officer William Sume testified that when he responded to the Venturas' home on April 27, 2015, Ventura was standing outside the residence near a pickup truck.  Ventura had a cut on his arm, which was treated by the local life squad at the scene.  Officer Sume then placed Ventura in his cruiser and transported him to jail.

{¶9}     Ventura testified in his own defense.  He admitted that he and Savanna had had a heated argument about him going to the hospital to witness the birth of his best friend's child.  He admitted yelling at Savanna, but he denied hitting her in the head.  He further admitted that he had thrown a fan into the kitchen and

4

had slammed the front door. He testified that following their argument, he got into his truck and drove to a side street where he had called his best friend. Following their conversation, he had remained in his truck for ten minutes to calm down. He then drove home.

{¶10} When he entered the house, Savanna was holding their daughter. She told him that she had called her mother and they began arguing. Ventura took their daughter, put her in her room, and told her that she needed to watch television, so he and Savanna could talk. He denied dragging Savanna to their bedroom. Instead, he testified that Savanna had remained in their bedroom sitting on the bed. When he walked back to the bedroom, they continued to argue about Savanna calling her mother and "starting all this stuff with her family." Ventura admitted that he carried a pocket knife, but he testified that the knife had remained in his pants pocket during their argument. He further admitted that their daughter had come into their bedroom while they were arguing and she had told him to stop. He then began taking Savanna's clothes out of their closet and putting them outside. He denied calling anyone or admitting to anyone, including Savanna, that he had hit her or that he had apologized to Savanna. He testified that Savanna had never tried to leave the house, and that the only time she had called the police was after he had started throwing her clothing outside. He further testified that he had stood outside their home for two to three minutes before the police had come.

{¶11} On cross-examination, Ventura agreed that he was so physically upset that he needed to pull his truck over and calm down before returning home. He testified that he had not gone to the hospital because he had received a call from his best friend asking him not to come. He admitted he had then returned home to confront Savanna about her cell phone call to her mother. He testified that when

their daughter had entered the room and had told him to stop, he and Savanna had just been yelling at one another. He further testified that he was angry with Savanna for calling the police because he had never been to jail and he did not want to lose his job. Ventura admitted that he had been so upset the day of his argument with Savanna that he had cut himself on the arm. He testified that the mark was three to four inches long. At the assistant prosecutor's urging, he showed the court a scar on his arm from the cut.

{¶12} At the conclusion of the evidence and arguments, the trial court found Ventura guilty and continued the matter to June 12, 2015, for sentencing. The trial court ordered that Ventura be held without bond for clinic advisability of treatment and a victim-impact statement.

### June 12, 2015 Hearing

{¶13} On June 12, 2015, the trial court stated on the record that it had received a letter from Ventura's mother, the presentence-investigation report, the victim-impact statement, and the court-clinic report. Ventura's counsel told the court that Ventura was 26 years old and a life-long resident of Cincinnati with no prior criminal record. Defense counsel stated that Ventura had support obligations from a prior marriage and he would like to get his job back. He further stated that Ventura was willing to attend anger management classes. The trial court asked Ventura if he wished to speak, but Ventura declined to do so. The trial court then asked the assistant prosecuting attorney if he had anything to say, and he responded, "No."

{¶14} The trial court then queried the parties about the hearing for an ex parte civil-protection order Savanna had obtained from the domestic relations division of the common pleas court. Savanna told the court that the hearing was set

for the following week. The court stated it wanted to ensure that Ventura was able to attend that hearing and asked how many days Ventura had been in jail. Defense counsel replied that Ventura had been locked up 47 days. The trial court then discussed on the record what sentence it might impose. The trial court stated that it could impose a 180-day jail sentence, but that sentence would not provide Ventura with any treatment and it wanted Ventura to get anger-management and mental-health treatment. The trial court then stated that it could sentence Ventura to 100 days in jail, credit the 47 days served, suspend 80 days, and following his completion of the remaining 53 days in jail, the court could place Ventura on probation, put him on a juris monitor, and order him to attend anger-management classes and to stay away from his daughter until he completed the anger-management classes.

{¶15} The trial court, however, did not impose this sentence on Ventura. Instead, it stated that sentencing would occur on August 7, 2015, and that the court would hold Ventura without bond in the interim to ensure that Ventura would serve a full 100 days in jail without being released early due to overcrowding in the Hamilton County Justice Center. The trial court stated that when Ventura returned for sentencing on August 7, 2015, it would give him credit for all the jail time that he had served. The court further stated that this delay in sentencing was the only way it knew to keep the sheriff from releasing Ventura early from jail, and to ensure the prosecuting witness's knowledge of Ventura's release from jail, and that the delay would give Ventura time to make living arrangements that would comport with electronic monitoring. The trial court then journalized an entry on the docket reflecting the above recitation and its decision to defer sentencing to August 7, 2015.

{¶16} On July 20, 2015, Ventura's counsel filed a motion to release him from custody due to the trial court's delay in sentencing him. Counsel argued that under

7

Crim.R. 32(A), Loc.R. 9.11(b)(6) of the Hamilton County Municipal Court, and applicable case law, the trial court's unnecessary delay in sentencing him had divested the trial court of its jurisdiction to sentence him. Thus, Ventura was entitled to be released from the custody of the Hamilton County Justice Center and to be subjected to no further penalties in the case.

### August 7, 2015 Hearing

{¶17} On August 7, 2015, defense counsel presented argument on the motion to release Ventura from custody. The trial court granted the motion in part and released Ventura from jail, but it overruled the motion to the extent that Ventura had asserted that the trial court had been divested of jurisdiction to sentence him. The trial court then sentenced Ventura to 180 days in jail, suspended 78 days, and credited him with 102 days. The court imposed court costs and ordered Ventura to complete 11 months of community control with the conditions that he attend anger-management classes through the YMCA's Amend program and seek mental-health services through Mental Health Access Point. The trial court also placed Ventura on electronic monitoring for an additional 90 days, and ordered him to have no contact with Savanna and to stay away from his daughter until he had completed anger-management and mental-health treatment.

### Weight of the Evidence

{¶18} For ease of discussion, we address Ventura's assignments of error out of order. We begin by addressing his second assignment of error, in which he argues that his conviction was against the manifest weight of the evidence.

{¶19} When addressing a defendant's challenge to the manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine

whether, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶20} Here, the record reflects that the trial court was presented with two different versions of the events. Savanna testified that during a heated argument with Ventura, he had hit her in the side of the head with his closed fist and he had later held her down and threatened her with a knife. While Ventura admitted arguing with Savanna, he denied hitting her in the head or threatening her with the knife. At the conclusion of the bench trial, the trial court expressly stated that it found Savanna's testimony to be more credible than Ventura's testimony. Given our review of the record, we cannot conclude the trial court lost its way and created a manifest miscarriage of justice by crediting Savanna's testimony and finding Ventura guilty of domestic violence. *See State v. Abbasov*, 2d Dist. Montgomery No. 26470, 2015-Ohio-5379, ¶ 35-36; *State v. Chasteen*, 12th Dist. Butler No. CA2013-12-223, 2014-Ohio-4622, ¶ 10-14; *State v. Henry*, 9th Dist. Summit No. 25479, 2011-Ohio-3566, ¶ 6-10. We, therefore, overrule Ventura's second assignment of error.

### *Delay in Sentencing*

{¶21} In his first assignment of error, Ventura argues that the trial court unnecessarily delayed his sentence in violation of Crim.R. 32(A) and Loc.R 9.11(b)(6) of the Hamilton County Municipal Court.

{¶22} Crim.R. 32(A) provides that "sentence shall be imposed without unnecessary delay." Sup.R. 5(B)(1) provides that each court shall adopt by local rule "a case management plan for the purpose of * * * maintaining and improving the timely disposition of cases." Pursuant to Sup.R. 5(B)(1), the Hamilton County

Municipal Court adopted Loc.R. 9.11. Loc.R. 9.11(b)(6) provides: "Sentencing: If not done immediately following trial * * * sentencing shall occur within 42 days."

{¶23} In addressing delayed-sentencing claims under Crim.R. 32(A), Ohio appellate courts have looked to the Ohio Supreme Court's opinion in *Neal v. Maxwell*, 175 Ohio St.201, 192 N.E.2d 782 (1963). In *Neal*, the Ohio Supreme Court stated that, "the time of pronouncing sentence is within the discretion of the trial court, and a delay for a reasonable time does not invalidate the sentence." Ohio appellate courts have taken this statement in *Neal* and inferred that while a reasonable delay does not invalidate a sentence, an unreasonable delay in sentencing can invalidate a defendant's sentence. *See State v. Brown*, 152 Ohio App.3d 8, 2003-Ohio-1218, 786 N.E.2d 492, ¶ 20 (7th Dist.). These appellate courts have "uniformly concluded that any delay in sentencing must be reasonable in order to be valid." *Id.* Where there has been an unreasonable delay in sentencing, Ohio appellate courts have concluded that the trial court has no jurisdiction to sentence the defendant. *Id.* at ¶ 31; *see also Willoughby v. Lukehart,* 39 Ohio App.3d 74, 76, 529 N.E.2d 206 (1987) (holding that an unjustified and lengthy delay of 12 months between the jury's finding of guilt and defendant's sentence deprived the trial court of jurisdiction to impose a sentence).

{¶24} Ventura first argues that the trial court erred when it sentenced him beyond the 42-day time frame set forth in Loc.R. 9.11(b)(6) of the Hamilton County Municipal Court. But Ohio courts have held that the Rules of Superintendence and the local rules promulgated thereunder are strictly internal administrative guidelines that are not intended to function as rules of practice and procedure, and therefore, they do not bestow or alter the basic substantive rights of criminal defendants. *See State v. Singer*, 50 Ohio St.2d 103, 110, 362 N.E.2d 1216 (1977); *see also State v.*

10

*Campbell*, 9th Dist. Medina No. 1948, 1991 Ohio App. LEXIS 1875, *3 (Apr. 24, 1991); *State v. Smith*, 47 Ohio App.2d 317, 327, 354 N.E.2d 699 (8th Dist.1976) (holding that "the Rules of Superintendence were not intended to function as rules of practice and procedure"); *State v. Gettys*, 49 Ohio App.2d 241, 243, 360 N.E.2d 735 (3d Dist.1976) (Rules of Superintendence have "no force equivalent to statute" and "are purely internal housekeeping rules"). Thus, the trial court's failure to adhere to the 42-day time frame in Loc.R. 9.11(b)(6) would not automatically translate to an "unnecessary delay" under Crim.R. 32(A). However, the time frame set forth in the local administrative rule can serve as an indicator of what may be considered an unnecessary delay. *See, e.g., State ex rel. Culgan v. Collier,* 135 Ohio St.3d 436, 2013-Ohio-1762, 988 N.E.2d 564, ¶ 11; *Warren v. Potts*, 11th Dist. Trumbull No. 95-T-5216, 1995 Ohio App. LEXIS 5724, *5, fn.1 (Dec. 22, 1995). Here, the record reflects that there was an 84-day delay between when the trial court found Ventura guilty at the conclusion of the bench trial and its imposition of a sentence upon Ventura.

{¶25} Ventura next argues that the trial court's delay in imposing his sentence was unnecessary. He argues that he and the state were present for sentencing on June 15, 2015, and the court had the necessary materials to impose sentence on him at that time, including the completed presentence-investigation report and court-clinic evaluation, and a letter from his mother. The trial court's stated purpose in delaying sentencing to August 7, 2015, was based on its concerns (1) that jail overcrowding would prompt the sheriff to release Ventura early and he would not serve a portion of the sentence the court eventually imposed and (2) that the victim would not be notified of Ventura's early release.

{¶26} We agree with Ventura that the trial court's stated reasons for delaying sentence are not supported by the record or the law. The record in this case contains no evidence of jail overcrowding. The Ohio Supreme Court has held that a county sheriff has no legal authority to release from the county jail a person who has not served his entire term of imprisonment based on concerns of jail overcrowding and budget shortfalls unless the early release has been ordered by a court or the governor. *See State ex rel. Wellington v. Kobly*, 112 Ohio St.3d 195, 2006-Ohio-6571, 858 N.E.2d 798, ¶ 24. Rather, R.C. 314.12 provides that "[i]n a county not having sufficient jail or staff, the sheriff shall convey any person charged with the commission of an offense, sentenced to imprisonment in the county jail * * * to a jail in any county which the sheriff considers most convenient and secure." Thus, if the Hamilton County Sheriff did in fact have insufficient jail space or staff, he would have had a duty under R.C. 314.12 to convey any person sentenced to imprisonment in the county jail to a jail in another county. Given that the sheriff had no legal authority to grant Ventura early release, the trial court's concern regarding jail overcrowding was not a legally-supported reason to delay Ventura's sentencing. Similarly, with regard to victim notification, the trial court could have placed a notation on Ventura's sentencing sheet asking the sheriff to notify Savanna prior to any release. Thus, we agree with Ventura that the trial court's reasons for delaying the imposition of Ventura's sentence were unnecessary.

{¶27} Having found the trial court's basis for delaying the imposition of Ventura's sentence was unreasonable and unnecessary, we sustain the second assignment of error. While we recognize that courts finding an unnecessary delay have also concluded that the trial court has no "jurisdiction" to impose a sentence, we decline to adopt such a position in cases involving noncompliance with Crim.R.

32(A). But where, as here, the failure to follow the mandate of Crim.R. 32(A) to impose sentence without unnecessary delay is the result of the trial court's unreasonable, calculated, and purposeful conduct, we determine it could not impose a sentence. We, therefore, affirm the trial court's finding of guilt, but we vacate the sentence imposed upon Ventura.

Judgment affirmed in part and sentence vacated.

**CUNNINGHAM** and **STAUTBERG, JJ.,** concur.

Please note:

The court has recorded its own entry this date.