## State of Vermont v. Arthur H. Moffitt

[340 A.2d 39]

No. 179-73

Present: Smith, Keyser, Daley and Larrow, JJ. and Shangraw, C.J., (Ret.), Assigned

Opinion Filed June 3, 1975

*Raymond G. Bolton, Esq.*, Bennington County State's Attorney, Bennington, for the State.

*Brock & Sidel,* Montpelier, for Defendant.

**Daley, J.** The subject of this appeal, and a matter of first impresssion in this Court, is the use of videotape technology during a criminal trial, wherein defendant Arthur Moffitt was convicted of driving a motor vehicle while under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201.

Due to its unique experimental aspects, the lower court proceedings are set forth in some detail as follows. Prior to trial, the parties and their counsel by a signed stipulation agreed that the testimony under oath of all witnesses would be presented to the jury by videotape. The taping occurred the day before the impaneling of the jury. The State's witnesses were examined and cross-examined in the presence of the defendant, with objections to the testimony being noted without any curtailment of the questioning. Then, the master tape was reviewed in chambers by counsel and the judge who ruled upon

any objections. A second tape was electronically constructed presenting the testimony of the witnesses in an order agreed upon by the parties, with all formal objections and matters ruled inadmissible removed. The State then rested. After the usual defense motions for acquittal, defendant elected not to take the stand and rested. Motions for acquittal were again made and denied.

The actual trial before the jury occurred the following day. Prior to voir dire, the judge informed the jury that the experiment of videotaping would be a part of the trial. The opening statements were made live by counsel in front of the jury followed by an uninterrupted showing of the edited videotape of witness testimony. Closing argument and the court's charge were also given live. Importantly, at no time below did counsel for defendant interpose any objection to the videotaped presentation of the testimony. We also note that for this appeal we have both the master videotape itself and the stenographic record of the entire trial.

Defendant rests his appeal here solely on the contention that the videotape method of evidentiary presentation deprived him of his right to fair trial guaranteed by the Fourteenth Amendment of the United States Constitution. But, for us to reach his argument, defendant must necessarily clear two hurdles. First, by stipulating his consent to the use of the videotape, defendant may have waived his constitutional rights, not otherwise provided with the use of videotape, if that waiver was made "voluntarily, knowingly, and intelligently." *State* v. *McGrath*, 130 Vt. 400, 405, 296 A.2d 636 (1972), quoting *Miranda* v. *Arizona*, 384 U.S. 436 (1966). Secondly, absent any objection to the videotape procedure below, we must be convinced that this case is one where "a glaring error occurred during the trial . . . so grave and serious that it strikes at the very heart of the [defendant's] constitutional rights", *State* v. *Morrill*, 127 Vt. 506, 511, 253 A.2d 142 (1969), before we will review the case.

Defendant suggests in answer that because of the novel and innovative nature of videotaping in criminal trials, his waiver of constitutional rights, if any, by permitting a substitution of videotape testimony for live testimony, could not have been made knowingly and intelligently. He urges that unfamiliarity with the effects of videotaping on the trial process and on the

jury renders the waiver, if any, by stipulation unknowing. Moreover, he claims the novelty of the videotape process and the unfamiliarity with its possible effects make this criminal trial, otherwise unremarkable, unique. Yet the answer to whether or not the use of videotape during trial was a glaring error striking at the core of defendant's constitutional rights awaits an analysis of defendant's arguments that the use of prerecorded testimony was inherently, if not actually, prejudicial to his right of a fair trial.

Defendant has not demonstrated any actual prejudice resulting from the use of the videotape in his trial, and in fact the record does not disclose any such error. He instead attacks the videotape procedure as "[involving] such a probability that prejudice will result that it [the procedure] is deemed inherently lacking in due process." *Estes* v. *Texas*, 381 U.S. 532, 542–43 (1965). He concedes, however, a vast difference between the factual situation at bar and the circus-like atmosphere of *Estes* where the filming and public televising of that trial created publicity damaging to the defendant. The *Estes* case actually involved filming a trial for broadcasting purposes.

The purpose of the videotaping below was merely to record witness testimony and, after editing for errors, to show the film to the jury. The videotaping testimony was utilized in a manner not unlike a written deposition, and depositions may be videotaped. *See* V.R.C.P. 30(b)(4). The Reporter's Notes to V.R.C.P. 30(b)(4) indicate that this rule permits, in the interest of economy, recording of deposition testimony by mechanical, electronic, photographic, or other means, by order of court, as here, to insure accuracy. The use of videotaped depositions has elsewhere received statutory approval. *See* Federal Rules of Civil Procedure 30(b)(4), Michigan Court Rules 315, Ohio Rules of Civil Procedure 30(b)(3) (non-stenographic depositions), and Pennsylvania Rules of Civil Procedure 4017.1. The State of Ohio has even gone as far as authorizing all testimony and other evidence to be presented via videotape. Ohio R. Civil P. 40; Ohio R. Superintendence 15.

In an attempt to support his claim of probable inherent prejudice arising from the very use of the videotape process, defendant would urge consideration of the following premises which he says would operate to the defendant's prejudice: psy-

chological effect upon the jury caused by the removal of the jurors in time and space from the witnesses; the entertainment aspect as deteriorating the somberness of trial; distortion of information communicated; jury distraction brought about by the process itself and the equipment utilized in production; and finally, the lack of procedural safeguards. We will not upon argument alone assume the presence of any of these elements in this case and none have been pointed out to us. We will not postulate a denial of due process upon an assumption that the presence of one or more of the factors argued by the defendant in and of themselves created a probability of inherent prejudice.

Insofar as safeguards are concerned, the record demonstrates a conscientious effort on the part of the court and counsel to record and present the testimony in a proper, fair manner. Moreover, sight and sound electronically prerecorded combined produce an accurate, reliable representation of actual occurrences. A similar phenomenon is witnessed by millions of people each day through the medium of television. In our opinion, the videotape process, although now experimentally utilized in the courtroom, is capable of accurately producing in sight and sound the voice, appearance, and demeanor of a witness in a court of law under safeguards provided by our present procedural structures and those within our power to promulgate. We here point out that the editing out of improper questions and inadmissible testimony, and the ordering of the presentation of witnesses to the parties' liking, can only promote the fairness of trial in the search for truth.

Defendant maintains, finally, that the videotaped presentation of evidence violates Canon 35 of the American Bar Association Code of Judicial Ethics. But, the use of videotaped testimony is not prohibited by the Canons when usage does not detract from the dignity of the proceedings, distract the witnesses, degrade the court process, or create misconceptions in the mind of the public. The strict regulation of courtroom conduct considered in Canon 35 and in V.R.Cr.P. 53 does not embrace the controlled evidentiary use of the videotape, as here. Canon 3A(7) of the Code of Judicial Ethics, in fact, allows the judge to authorize the use of electronic means for the presentation of evidence and for other purposes of judicial administration.

We have carefully examined the claims of defendant and the videotape presentation itself and conclude that there is nothing inherently prejudicial in videotaping witness testimony for trial purposes where, as here, the defendant has consented thereto and the dictates of proper courtroom procedure have been followed. The glaring error contemplated by *State* v. *Morrill, supra,* has neither been shown, nor found. Defendant's claim that he was denied a fair trial must fail.

*Judgment affirmed.*