DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, James D. Arrington, appeals from a judgment of the Summit County Court of Common Pleas, which dismissed his claim. We affirm.
 I. {¶ 2} By all available accounts, there are thousands of workers' compensation related asbestosis cases currently pending in the State of Ohio court systems, including hundreds in Summit County. This appeal stems from one such case, in which the Industrial Commission of Ohio (ICO) denied a particular claimant the right to participate in the Ohio Workers' Compensation Fund ("Fund"). By January 2003, Summit County had over 400 of these individual but virtually identical cases, so the Ohio Supreme Court collected them into a single master-file case titled Inre: The Summit County Workers Compensation Asbestos Cases, and assigned them to Honorable John R. Milligan, retired but sitting by special assignment. Every case entails the limited issue of whether or not the asbestosis claimant has a right to participate in the Fund.
 {¶ 3} In the present case,[1] Mr. Arrington filed an application for benefits under the Ohio Workers' Compensation Act, claiming that he had contracted asbestosis during his employment with Appellee, Daimler Chrysler Co. The ICO heard his claim but denied him the right to participate in the Fund. Pursuant to R.C. 4123.512, Mr. Arrington filed an appeal in the Summit County Court of Common Pleas, seeking review of the denial. Mr. Arrington's case was grouped with the 400-plus identical workers' compensation asbestosis cases.
 {¶ 4} As part of the assignment, the Ohio Supreme Court had directed Judge Milligan to facilitate resolution of this case load as expeditiously and efficiently as practical. Therefore, during a case management meeting in early 2003, Judge Milligan consulted with the attorneys for the various parties regarding the possibility of instituting an innovative trial-by-videotape procedure for these cases. Shortly thereafter, in an order dated June 24, 2003, Judge Milligan defined this trial-by-videotape procedure to mean that "voire dire, opening statement and closing argument to be done live; all other testimony and jury instructions to be presented by videotape." Mr. Arrington objected to this procedure and persisted with his objections during subsequent case management meetings.
 {¶ 5} On December 12, 2003, Mr. Arrington filed a motion to vacate the trial-by-videotape order. In that motion, Mr. Arrington argued that no compelling reasons existed to order the trial-by-videotape, that he would be unduly prejudiced by such an order, and that imposing such an order would be unconstitutional. Mr. Arrington's principal objections were that the trial court, by forcing him to present all witness testimony (including his own) by videotape, had denied him due process and the right to a jury trial. He hypothesized nine forms of prejudice that would befall him if he were forced into the trial-by-videotape, chief among them being that witnesses could not interact with the jury and jurors would not pay as close attention to videotape as they would to live testimony. Notably, these are the identical arguments, in form and substance, as have been asserted in Mr. Arrington's brief in his appeal to this Court.
 {¶ 6} The trial court denied the motion in an order dated December 29, 2003 ("Journal Entry"). In that Journal Entry, Judge Milligan documented the Ohio Supreme Court's basis for consolidating the cases, the impetus for his admittedly unusual trial-by-videotape approach, the legal authority for compelling trial-byvideotape over the parties' objections, and the rationale he applied in deciding to impose the order. It is essentially this Journal Entry that Mr. Arrington now challenges on appeal.
 {¶ 7} On January 23, 2004, the court ordered Mr. Arrington's particular case to trial, and prescribed April 2, 2004 as the specific date for production of the videotape testimony. Mr. Arrington did not file the videotape as instructed, but rather insisted that he and his witnesses would testify live. On April 15, 2004, the court granted Mr. Arrington leave to comply with the previous order by filing the videotape no later than April 30, 2004, and specifically warned that unless the videotape was delivered as ordered the case would be dismissed.
 {¶ 8} Mr. Arrington did not deliver the videotape. At the final pretrial, his counsel insisted that Mr. Arrington and his witnesses were present to testify live, but refused to produce the videotape. On May 10, 2004, the court entered an order of final judgment, dismissing the case under Rule 41(B)(1) of the Ohio Rules of Civil Procedure, upon finding that without the videotapes Mr. Arrington's case was "in default for want of any probative evidence." Mr. Arrington appealed to this Court, asserting two assignments of error for review.
 II. A. First Assignment of Error
"The trial court erred in its may 10, 2004 `final judgment,' dismissing this case for non-compliance with the trial court's trial-by-videotape orders."
 {¶ 9} Mr. Arrington asserts that the trial court erred by dismissing his claim when he refused to comply with the court's trial-by-videotape order, because the court failed to articulate the findings necessary to support the trial-by-videotape order. Alternatively, Mr. Arrington contends that the court abused its discretion in finding compelling reasons for the trial-by-videotape to outweigh the cognizable prejudice to the parties. We disagree.
 {¶ 10} Rule 40 of the Ohio Rules of Civil Procedure provides for the use of pre-recorded testimony at trial:
"All of the testimony and such other evidence as may be appropriate may be presented at a trial by videotape, subject to the provisions of the Rules of Superintendence." Civ.R. 40.
Rule 13(B) of the Rules of Superintendence for the Courts of Ohio provides the relevant provisions for videotape trials, including the court's authority to order such a procedure, even over the parties' objections:
"The trial judge may order the recording of all or a portion of testimony and evidence on videotape in an appropriate case. In determining whether to order a videotape trial, the trial judge, after consultation with counsel, shall consider the costs involved, the nature of the action, and the nature and amount of testimony." Sup.R. 13(B)(2).
 {¶ 11} In 1992, the Ohio Supreme Court issued its definitive and only ruling to date on this trial-by-video procedure, for cases in which the trial court has ordered trial-by-videotape over the objections of the parties. See Fantozzi v. Sandusky Cement Prods. Co. (1992),64 Ohio St.3d 601. The Fantozzi Court set forth specific instructions for the reviewing court, with dual standards of review for sequential stages of the analysis. Id. at 609.
 {¶ 12} As the initial stage of review, the Fantozzi Court imposed a compliance rule, that the reviewing court must reverse unless the trial court "reflects in a journal entry" three things: (1) its procedural compliance with the "consult" and "consider" provisions of Sup.R. 13(B)(2);[2] (2) a compelling reason for trial-by-videotape; and (3) "no cognizable prejudice will be suffered by the parties." Id. Thus, the trial court's order at issue must "reflect"[3] each of these three requirements.
 {¶ 13} Under the first requirement in Fantozzi, the trial court must journalize that it conducted "consultation with counsel," and "consider[ed] the costs involved, the nature of the action, and the nature and amount of testimony." Sup.R. 13(B)(2). See Fantozzi,64 Ohio St.3d at 609. See, also, Chaffee v. Utility Assistance Corp. (May 13, 1994), 6th Dist. No. E-93-10 (reversing for failure to prepare a compliant journal entry). In the present case, the December 29, 2003 Journal Entry reflects that Judge Milligan consulted with counsel as early as April 2003, and that prior consultation had even included an invitation to each of the attorneys to "observe the facilities at the University [of Akron School of Law] and make suggestions about how the process [of videotaping the trials] would work." Regarding the costs, nature of the action, and nature of the testimony, the Journal Entry states, among other things:
"In reaching this conclusion the court has determined that the costs will be minimalized, the nature of each of the actions is particularly appropriate to the presentation of testimony in such fashion, and the relevant, material testimony that will ultimately be presented to the jury will be minimal."
Thus, we find that the Journal Entry adequately reflects that the trial court consulted with counsel and considered the cost, action and testimony.
 {¶ 14} Under the second requirement, the journal entry must reflect a compelling reason for the trial-by-videotape. Fantozzi,64 Ohio St.3d at 609. Judge Milligan began his Journal Entry by explaining the problems with the case load, including:
"[the] large number of cases, * * * the nature, substantive content, age of cases, the limited and similar issues involved in virtually all of these cases, * * * [that much] of the discovery * * * was being videotaped, that professional testimony was * * * indigenous[,] * * * [that] large numbers of jurors would be required, and Summit County court facilities were limited[.]"
According to the Journal Entry, the trial-by-videotape would minimize duplicative testimony and discovery, reduce costs, reduce the burden on jurors, and shorten trial times, which would free up facilities, expedite cases and save money. From these findings, Judge Milligan concluded:
"These are certainly compelling reasons in the discretion and judgment of this court for the earlier order that these cases be tried [by videotape] as above indicated."
Also, inherent in the entire scheme is that this situation, regarding the hundreds of asbestosis-based workers' compensation claims, was deemed sufficiently problematic that the Ohio Supreme Court was compelled to specially assign Judge Milligan, out of retirement, to implement a bold and innovative response plan. This suggests a compelling interest. Thus, we find that the Journal Entry adequately reflects the second requirement.
 {¶ 15} Under the third requirement, the journal entry must reflect that no cognizable prejudice will be suffered by the parties. Fantozzi,64 Ohio St.3d at 609. Mr. Arrington founds his argument on the trial court's failure to articulate an express finding of no prejudice, despite the substance of the Journal Entry.[4] Although he did not use magic words or express language, Judge Milligan did address the issue of prejudice in the Journal Entry:
"The issues to be resolved in each case by a jury are simple and direct generally, is the party entitled to participate in the insurance fund. There is no issue of damages or compensation.
"Plaintiffs, claimants, are entitled to a prompt, fair, and efficient day in court in order that they might get compensation to which they may be entitled; Defendant, employers, are entitled to a merit determination of their liability as it relates to reserves and their obligations."
We find these statements to be a reasonable articulation of Judge Milligan's consideration and dismissal of cognizable prejudice to the parties. Thus, we find that the Journal Entry adequately reflects the third requirement.
 {¶ 16} Based on our scrutiny of the trial court's December 29, 2003 Journal Entry, we conclude that the entry meets the requirements that must be reflected in such a journal entry, and therefore, we proceed to the next stage of the Fantozzi analysis. In the subsequent stage of review, the Supreme Court expressly limited the role of the reviewing court:
"Where there is an objection to a videotape trial, and the trial court has consulted with counsel for the parties and filed an entry setting forth that the court has considered the factors of the rule, but still has ordered a videotape trial, a reviewing court should limit its inquiry to whether the trial court abused its discretion." Fantozzi,64 Ohio St.3d at 610.
Abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable," Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. Importantly, when applying the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. Id.
 {¶ 17} In the present case, Mr. Arrington argues that none of the trial court's reasons for ordering the trial-by-videotape warrant such an order, because, in Mr. Arrington's opinion, these reasons are insupportable. Mr. Arrington supports his own argument by offering speculation that the consequences will be contrary to those envisioned by the trial court. Mr. Arrington also offers several speculative claims of prejudicial harm that he would incur through the administration of a trial-by-videotape: (1) witnesses will be unable to engage the jury; (2) jurors will not be as attentive; (3) it prohibits or inhibits demonstrative exhibits, including the use of an "Elmo" projector to highlight to the jury important passages in a document; (4) it inhibits counsel's trial strategy flexibility, to adjust during trial, have witnesses respond to other witnesses, or call rebuttal witnesses; (5) it will prevent the party from assisting counsel as trial proceeds; (6) it will prevent the introduction of evidence discovered during the lag time between recording the video and presenting it at trial; and (7) it will add additional costs. Notably, because Mr. Arrington refused to comply with Judge Milligan's order to produce the videotape, he did not participate in a trial, and all of his claims remain speculative. SeeState v. Davis (1988), 38 Ohio St.3d 361, 364 fn. 7 (holding that a speculative argument is insufficient to prove prejudice); United Statesv. Marion (1971), 404 U.S. 307, 326, 30 L.Ed.2d 468 (concluding that possibilities are not enough to establish prejudice).
 {¶ 18} However, if we were to entertain speculative arguments, we need only look to the Fantozzi opinion, which documents 21 purported advantages of trialby-video, many of which directly contradict Mr. Arrington's claims. See Fantozzi, 64 Ohio St.3d at 606, fn. 2, quoting McCrystal Young, Pre-Recorded Videotape Trials — An Ohio Innovation (1973), 39 Brooklyn L. Rev. 550, 563-64. For example, the Fantozzi
opinion contradicts Mr. Arrington's claims numbered (2), (4), (5) and (7), suggesting that: streamlining of the testimony is better for keeping the jury's attention; it improves the trial strategy flexibility by easing the availability, access, and effectiveness of witness presentation; provides for increased consultation with the party and party witnesses; and saves costs. Id. One scholar stresses the significance of the trial-by-video concept with the statement: "Failure of the courts to use video may well doom them in the eyes of the public as an out-of-date, hopelessly inadequate institution." Hartmus, Videotrials (1996), 23 Ohio N.U.L. Rev. 1, 3 (providing cumulative empirical evidence of the benefit of a trial-by-videotape, many of which contradict the presupposed disadvantages). Beyond mere speculation, this scholar disputes certain of Mr. Arrington's claims with juror survey data, including numbers (1), (2) and (4): jurors actually preferred the trial by video, while the outcome of the cases were the same and exhibited no difference in the juror's ability to detect deception; jurors actually retained more information from trial-by-video than from live presentations, and felt that that shorter, uninterrupted video better held their attention; and, the full development of evidence and ruling on objections in advance reduced surprise tactics and improved fact finding. Id. at 4-6.
 {¶ 19} Based on our review, we conclude that Mr. Arrington's speculative arguments are not so persuasive as to establish that the trial court's decision was unreasonable, arbitrary or unconscionable. SeeBlakemore, 5 Ohio St.3d at 219. Also, we reiterate that under this standard of review, we may not merely substitute our judgment for the trial court's judgment. Pons, 66 Ohio St.3d at 621. On the whole, we find that Judge Milligan complied with the requirements of Civil Rule 40 and Superintendence Rule 13(B), and that his decision was within his sound discretion. Accordingly, Judge Milligan was within his authority to dismiss Mr. Arrington's claim for failure to produce the required videotapes as instructed. See Jameson v. Sommer's Mobile Home Sales,Inc. (Sept. 16, 1981), 9th Dist. No. 3206 (upholding a dismissal from trial-by-videotape for failure to produce the videotape, even where such failure was not intentional). Mr. Arrington's assignment of error is without merit.
 B. Second Assignment of Error
"The Trial Court erred in entering the trial-by-videotape orders, precluding appellant james arrington (`arrington') from presenting live testimony at his trial."
 {¶ 20} Mr. Arrington asserts that Rule 40 of the Ohio Rules of Civil Procedure and Rule 13(B) of the Rules for the Superintendence of the Courts of Ohio, which enable the trial court to order a trial-by-videotape, are unconstitutional as violative of his fundamental rights under the United States and Ohio Constitutions. Specifically, Mr. Arrington contends that a compulsory trialby-videotape violates his constitutional right to testify live and present live witnesses. We disagree.
 {¶ 21} As a preliminary matter, we note that Superintendence Rule 13(B) is not subject to this constitutional challenge. The Rules of Superintendence for the Courts of Ohio are merely housekeeping rules promulgated by the Ohio Supreme Court under Section 5(A)(1), Article IV of the Ohio Constitution, and are not rules of practice or procedure. Statev. Smith (1976), 47 Ohio App.2d 317, 327; Id. at 329 (Krenzler, J., concurring) ("The Rules of Superintendence are neither the substantive nor procedural law of Ohio."). Mr. Arrington's constitutional challenge is properly directed only to Civil Rule 40:
"All of the testimony and such other evidence as may be appropriate may be presented at a trial by videotape, subject to the provisions of the Rules of Superintendence." Civ.R. 40.
 {¶ 22} In arguing that this rule is unconstitutional, Mr. Arrington claims the fundamental right to a jury trial under the Seventh Amendment to the United States Constitution or Section 5, Article I of the Ohio Constitution, and further claims that such a right encompasses the right to present live testimony to the jury, rather than the videotaped testimony ordered by Judge Milligan. We disagree.
 {¶ 23} On his federal constitutional claim, we find fault with Mr. Arrington's predicate premise, that he has a Seventh Amendment fundamental right to a jury trial in state court; he does not. Under the doctrine of selective incorporation, the Fourteenth Amendment to the United States Constitution extends to the states only certain, qualifying provisions of the Bill of Rights. Adamson v. California (1947), 332 U.S. 46,53, 91 L.Ed. 1903 ("The due process clause of the Fourteenth Amendment, however, does not draw all the rights of the federal Bill of Rights under its protection."). One such unincorporated right is the Seventh Amendment right to a civil jury trial; the Fourteenth Amendment does not assure such a right in state court proceedings. Gasperini v. Ctr. forHumanities (1996), 518 U.S. 415, 432 fn. 14, 135 L.Ed.2d 659, citingWalker v. Sauvinet (1876), 92 U.S. 90, 92-93, 23 L.Ed. 678. As Mr. Arrington is assured no right to a jury trial in state court under theSeventh Amendment, any claims of associated constitutional rights are similarly unavailable. That is, if Mr. Arrington has no right to a jury, then accordingly, he holds no right to sit face-to-face with a jury, to interact with a jury, or to present live testimony to a jury. Since Mr. Arrington does not possess these rights, he has no claim that these rights have been violated.
 {¶ 24} Despite the absence of a Seventh Amendment right, Mr. Arrington may have asserted a due process claim based in the amorphous concept[5]
of the right to a fair trial. See Verbanic v. Verbanic (1994),70 Ohio St.3d 41, 44; Allen v. Smith (1911), 84 Ohio St. 283, 291. But, even assuming that Mr. Arrington holds some indefinable right to live civil trial testimony, we cannot conclude that such a right is "fundamental." See, e.g., State v. Moffitt (1975), 133 Vt. 366, 370,340 A.2d 39 (upholding trial-by-video, even in a criminal case). Therefore, the validity of Civil Rule 40 would be evaluated under rational basis review: it will be upheld unless it is "wholly irrelevant to achievement of the state's purpose." Menefee v. Queen City Metro
(1990), 49 Ohio St.3d 27, 29. As discussed above, the trial court recounted several reasons that would justify the Rule in this case: cost savings, unavailability of experts, docket size, single issue action, minimal necessary testimony, convenience to jurors, limited courtroom facilities and staff, and overall time savings. Given these reasons, this Court cannot say that this Rule lacks a rational basis, on its face or as applied to Mr. Arrington's situation.[6] Based on the above analysis, Mr. Arrington's claim is consequently limited to his claim of rights under the Ohio Constitution.
 {¶ 25} As with his assertions under the Federal Constitution, Mr. Arrington's principal argument is founded in his belief that he has a fundamental right to a jury trial, which encompasses the right to present live testimony. However, we must once again disagree with Mr. Arrington's predicate premise. Under the Ohio Constitution:
"The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury." Section 5, Article I, Ohio Constitution.
Although this is a fundamental right, it is not absolute:
"[T]his constitutional provision does not guarantee a jury trial in all cases, but only for those causes of actions where the right existed at common law at the time the Ohio Constitution was adopted." Sorrell v.Thevenir (1994), 69 Ohio St.3d 415, 421.
The Ohio Constitution was adopted in 1851. Section Schedule 0.01, Article XCIX, Ohio Constitution. In 1851, concepts such as asbestosis, a workers' compensation fund, and statutory appeals from administrative agency adjudications were entirely unknown to the common law. Therefore, under the circumstances of this case, Mr. Arrington is not assured a constitutional right to a jury trial under the Ohio Constitution. SeeSorrell, 69 Ohio St.3d at 421.
 {¶ 26} Alternatively, Mr. Arrington also argues that Civil Rule 40 is unconstitutional under one of three other provisions of the Ohio Constitution. The right to equal protection clause states:
"All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly." Section 2, Article I, Ohio Constitution.
The right to due process and the right to open courts clauses state:
"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Section 16, Article I, Ohio Constitution.
And, the right to workers' compensation clause states:
"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made * * *." Section 35, ArticleII, Ohio Constitution.
A careful reading of Civil Rule 40 in comparison with the above provisions demonstrates that none of these provisions is in direct conflict with this rule. That is, none of Mr. Arrington's asserted provisions of the Ohio Constitution expressly contradict Civil Rule 40 or prohibit the order of trial-by-video. Therefore, Mr. Arrington asks that we infer from the purpose of these provisions that Civil Rule 40 is in conflict and is therefore unconstitutional.
 {¶ 27} In this analysis, we begin with the presumption that all of the Ohio Rules of Civil Procedure are presumed constitutional. See Town Country Drive-In Shopping Ctr., Inc. v. Abraham (1975),46 Ohio App.2d 262, 268 (denying a due process challenge because "we merely need state that all of the Ohio Rules of Civil Procedure * * * have been promulgated and lawfully enacted in the state of Ohio pursuant to Section 5(B), Article IV of the Ohio Constitution, and the aspects of due process in their application have been considered"). See, also,Sorrell, 69 Ohio St.3d at 418-19 (noting the strong presumption of constitutionality). Next, we recognize the settled principle that courts must construe the Civil Rules to afford a constitutional interpretation, wherever possible. State ex rel. Thompson v. Spon (1998),83 Ohio St.3d 551, 555 (articulating the court's "duty to give * * * the applicable Rules of Civil Procedure a constitutional construction * * * to avoid constitutional infirmities"). Thus, we are not at liberty to search out a conflict between Civil Rule 40 and one of these provisions, which would render Civil Rule 40 unconstitutional, where such a conflict is not evident. Mr. Arrington has directed us to no case, and we have discovered none, that persuades us that this conflict is evident. See Angle v. W.Res. Mut. Ins. Co. (Sept. 16, 1998), 9th Dist. No. 2729-M (appellants bear the burden of affirmatively demonstrating error on appeal).
 {¶ 28} Finally, we acknowledge that the Ohio Supreme Court is the final arbiter on constitutionality under the Ohio Constitution, and as an intermediate appellate court, we do not sit in a position to overrule the Ohio Supreme Court's reasoning on such matters. This is particularly pertinent in the present consideration of Civil Rule 40, because the Ohio Supreme Court has implicitly documented its reasoning on the constitutionality of Civil Rule 40 by promulgating operating instructions for the application of Civil Rule 40 in the form of Superintendence Rule 13. By articulating the procedures necessary to impose and enforce Civil Rule 40, the Ohio Supreme Court has effectively framed the legality of the Rule and preempted lower courts from considering challenges based on the Ohio Constitution.
 {¶ 29} Accordingly, Mr. Arrington cannot make out a claim that Civil Rule 40 violates a concrete right, which would implicate further analysis by this Court, such as strict scrutiny or rational basis review. For all of the above reasons, we find that Mr. Arrington's assignment of error is without merit.
 III. {¶ 30} Mr. Arrington's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Boyle, J. concurs.
Carr, P.J. Concers in Judgment only.
[1] By motion of the parties, this Court consolidated nine individual appeals under one case number: 22108, 22270, 22271, 22272, 22273, 22274, 22284, 22285, and 22311. Under this order, the cases were consolidated for the purpose of the record, briefs and presentation of oral argument. The filings for the present appeal, No. 22108, constitute the filings for each of the other appeals.
[2] The Rules of Superintendence for the Courts of Ohio were revised July 1, 1997, and certain rules were renumbered. Current Sup.R. 13(B) was previously C.P.Sup.R. 12(B), as cited in Fantozzi. The applicable portions of current Sup.R. 13(B) and former C.P.Sup.R. 12(B) are substantially identical:
"The trial judge may order the recording of all testimony and evidence on videotape in an appropriate case. In determining whether to order a videotape trial, the trial judge, after consultation with counsel, shall consider the costs involved, the nature of the action and the nature and amount of testimony." Fantozzi, 64 Ohio St.3d at 606, quoting former C.P.Sup.R. 12(B)(2) (as effective in 1992).
[3] We emphasize that the Ohio Supreme Court used the word "reflect" in its opinion, which we read to allow for a reasonable interpretation of the trial court's order. See Fantozzi, 64 Ohio St.3d at 609. That is, on review, this Court need not look for magic words or particular language to conclude that the trial court has "reflected" the three requirements in its journal entry, but need merely find a reasonable understanding based on context.
We are further persuaded of this position by the remainder of theFantozzi paragraph, in which the Supreme Court instructs the reviewing court on harmless error and interpretation of particular aspects of the trial court's journal entry:
"In considering whether such error was prejudicial, the reviewingcourt should take into consideration the parties' constitutional right to trial by jury, giving substantial emphasis to the fact that all parties objected to a videotape trial. The reviewing court should also consider any other factors that may have induced the trial court to order videotaping, with the underlying premise being that the trial court, under such circumstances, should be extremely cautious in entering such an order. When the reviewing court cannot find any compelling reasons for the trial court's order of videotaping over the objection of the parties, the order should be found to be prejudicial error." (Emphasis added.) Id. at 609-10.
Thus, by implication, the Supreme Court has acknowledged that there may be situations in which a journal entry does not fulfill the exact requirements, yet the error is not prejudicial; that is, such an omission may be mere harmless error. See, generally, State v. Madrigal (2000),870 Ohio St.3d 378, 388.
[4] We also note that this case entails more than a simple journal entry that would order the trial-by-video over cursory objection. This particular Journal Entry orders the denial of "Plaintiffs' Motion to Vacate Videotaped Trial Order," which is Mr. Arrington's 20-page admonishment to the court of all the prejudice that will ensue from a trial-by-videotape order, including 57 pages of supporting affidavits and exhibits. It is axiomatic that a court is presumed to consider the motion before it when ruling upon that motion. Thus, the express denial of this motion may, of its own existence, reflect awareness of potential prejudice and a conclusion that such prejudice was not sufficiently cognizable to overcome the trial-by-video order.
[5] "There has been a great deal of discussion among law writers as to the meaning of the phrase due process of law. We think it means what is here set forth, a fair and impartial trial under the constitution and laws of our state. Due process of law is right of trial according to the processes and proceedings of common law, or law in its regular course of administration, through the courts of justice." Coal Co. v. Rosser
(1895), 53 Ohio St. 12, 17.
[6] In his brief to this Court, Mr. Arrington also assertedFourteenth Amendment Due Process and Equal Protection violations. However, each of these claims is necessarily predicated on the existence of a fundamental constitutional right. Because this right does not exist, fundamental or otherwise, these claims are without merit. We decline Mr. Arrington's suggestion that asbestosis-inflicted Fund claimants comprise a constitutionally protected class for purposes of Equal Protection analysis.