THE STATE, EX REL. McKEE, PROS. ATTY., APPELLEE, *v.*
COOPER, DIRECTOR, ET AL., APPELLANTS.

(No. 74-62—Decided December 11, 1974.)

66

*Mr. William F. McKee*, prosecuting attorney, *Mr. Max K. Chilcote* and *Mr. Harry M. Welsh*, for appellee.

*Mr. William J. Brown*, attorney general, and *Mr. Richard B. Igo*, for appellants.

I.

STERN, J. Appellants initially raise the argument that prohibition does not lie in this case. The law is well-established in Ohio that the conditions which must exist to support the issuance of a writ of prohibition are: (1) The court or officer against whom it is sought must be about to exercise judicial or quasi-judicial power; (2) it must appear that the refusal of the writ would result in injury for which there is no other adequate remedy in the ordinary

course of the law, and (3) the exercise of such power must be unauthorized by law. *State, ex rel. Lehmann,* v. *Cmich* (1970), 23 Ohio St. 2d 11.

Assuming, arguendo, that appellee is correct in his contention that the Authority may not parole a reformatory prisoner before he has served the minimum term, less time off, prohibition would be the proper remedy for the following reasons. First, the act of holding a hearing to decide whether one convicted of a crime shall be held in confinement or granted parole constitutes an exercise of judicial or quasi-judicial power; it is precisely the act which a judge performs when he pronounces sentence, and the hearing itself results in decisions which affect fundamental rights of the prisoner. Second, for the writ of prohibition to issue, it must appear that the refusal of the writ would result in injury for which there is no other adequate remedy at law. In the instant case, there is no provision in the statutes for an appeal of any decision of the Authority. We find, therefore, that there is no other adequate remedy at law.

The issue that remains is fundamental: Did the Authority exercise power unauthorized by law when it scheduled a parole hearing for a reformatory inmate before the expiration of his minimum sentence? We hold that it did not, for reasons which we discuss later in this opinion.

II.

Before considering the statutory provisions governing the granting of parole by the Authority, it is important to recall the function of parole in our correctional systems.

Parole is not a full release, nor is it a form of leniency. Rather, it is the conditional extension of certain freedoms, under the supervision of a parole officer, to a person who has already served a period of time in a correctional institution. The parolee remains in technical custody and will ordinarily have definite conditions placed on his continued freedom from actual imprisonment. For example, the parolee may be prohibited from buying a car, borrowing money, changing his residence, or marrying, unless he receives the permission of his parole officer. Special condi-

tions may be imposed, typically requiring that the parolee refrain from drinking or from working at certain occupations. He will normally be required to report regularly to his parole officer. These conditions impose considerable restraints on the freedom of the parolee; if the parolee violates a condition of his parole, he can be remanded to imprisonment in a correctional institution after an administrative hearing without the need for criminal proceedings. See *Morrissey* v. *Brewer* (1972), 408 U. S. 471, 477-82. For minor violations, there frequently will be no revocation of parole, but every parolee is subject to restraints on his freedom, and to revocation of his privileges and return to full imprisonment if he violates the conditions of his parole.

Parole is used properly as a flexible alternative to either imprisonment or total release, and as a means of controlling the transition between imprisonment and life in the community. Parole is a form of supervised custody outside prison walls and attempts to deal with a fundamental problem of penology—how is a prisoner who has been confined within the artificial world of prison life to be reintegrated into society so that he is least likely to commit new crimes, and is most able to find a productive role. As the United States Supreme Court stated in *Morrissey* v. *Brewer, supra,* at 477 (1972), 408 U. S. 471: " * * * [Parole's] purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. * * *" Parole properly supervised permits flexibility and individualization of treatment, while the prisoner is outside prison walls.[2]

---

[2]The importance of this aspect of parole is well-stated in a report of the U. S. Attorney General on parole, 4 Attorney General's Survey of Release Procedures (1939), Chapter 2, at page 33.

"No rehabilitation, is possible without individualization. The difficulty is that the possibilities of individualization within the prison are extremely limited. Even in the best reformatories and penitentiaries the very necessities of penal administration under present day conditions are such that a really individual treatment of offenders is to a large extent impossible. Prison overcrowding, lack of facilities, lack

Most prisoners are eventually returned to the community, and correctional authorities increasingly recognize that both the community and the prisoner can benefit by a period of parole during which the parolee can be supervised to determine his rehabilitation. See Goldfarb and Singer, After Conviction, 276 (1973); Dawson, Sentencing, 420-21 (1969).

An alternative to parole is more time behind prison walls followed by release, which is of little aid in the reintegration of the prisoner into the community. In fact, long sentences can often be self-defeating and produce hostility and increased potential for further crime after release, and it is increasingly recognized that "* * * community based alternatives to institutionalization * * * are the most effective, fruitful, and realistic solutions to the proper handling of offenders." Final Report of the Ohio Citizens' Task Force on Corrections A8 (1971).

Parole, used properly, is an integral part of a correctional system, and, as the final exercise of control over prisoners, is a crucial part of the process by which prisoners are sought to be rehabilitated.

---

of funds, lack of personnel—all these factors prevent an individualized treatment and to the same extent prevent a real rehabilitation of the prisoners.

"Moreover, even where a measure of individual treatment is achieved in prison, such individualization must remain largely theoretical within four strong walls, whereas the real test of rehabilitation is possible only in a state of freedom. Individual treatment can be most valuable to the offender at the critical time when he is actually going through the process of readjustment to free life. Not only are the possibilities of individualization limited by the very character of our prisons, but the actual condition of the offender is, unfortunately, often degraded rather than improved by time spent in many institutions. Sometimes the offender comes out worse than he was when he entered the prison. Instead of being rehabilitated he has been subject to 'cross-infection' by hardened criminals, and when he is released he is potentially more dangerous than he was before he was incarcerated. While this unfortunate situation increases the importance of parole as a means of rehabilitation, it also makes its functioning very difficult, since parole is given the job of counteracting all the bad influences the offender has been exposed to while in prison. * * *"

We turn next to consideration of the statutory scheme for the use of parole in Ohio's correctional institutions.

### III.

Ohio has two types of correctional institutions. Penitentiaries are governed by R. C. Chapter 5145 and are places for the imprisonment of persons convicted of felonies. Reformatories are governed by R. C. Chapter 5143 and are also for the confinement of convicted felons, but only those who are young first offenders, with certain exceptions.[a]

It is the purpose of reformatories to separate those prisoners from older prisoners and multiple offenders who could exert harmful influences on a youth committed for the first time. Typically, reformatories place greater emphasis on rehabilitation than do penitentiaries, and less emphasis on discipline and punishment. Further, in order to give the Department of Rehabilitation and Correction the best chance of maintaining an atmosphere of rehabilitation, the department is given authority under R. C. 5143.-09 to "transfer an apparently incorrigible prisoner whose presence in the reformatory appears to be seriously detrimental to the well-being of the reformatory."

It is the clear intent of the statutory scheme for correction to provide different treatment for youthful first offenders with regard to the conditions of confinement. The

---

[a]R. C. 5143.03 provides:

"Male persons between the ages of sixteen and twenty-one years convicted of a felony shall be sentenced to the reformatory instead of the penitentiary, if such males have not been known previously to have served a sentence in a federal, state or other prison or correctional institution for conviction of a felony.

"Male persons between the ages of twenty-one and thirty years may be sentenced to the reformatory instead of the penitentiary, if such males have not been known previously to have served a sentence in a federal, state or other prison or correctional institution and if the court passing sentence deems them amenable to reformatory methods.

"No male person convicted of murder in the first or second degree shall be sentenced or transferred to the reformatory."

Females above the age of 16 who are convicted of felonies are assigned to the reformatory for women (R. C. 5143.21); there are no penitentiaries for women in Ohio.

issue posed herein is whether the General Assembly also intended to establish different treatment with regard to parole eligibility.

The Authority's powers are set out in R. C. 2967.03, as follows:

"The authority may recommend to the governor the pardon, commutation, or reprieve of sentence of any convict or prisoner, or grant a parole to any prisoner, if in its judgment there is reasonable ground to believe that, if the convict is granted a pardon, commutation, or reprieve, or the prisoner is paroled, such action would further the interests of justice and be consistent with the welfare and security of society. * * * "

This language grants broad discretion to the Authority to parole prisoners at any time. This discretion is not unlimited. Former R. C. 2967.19 provided: "a person confined in a state penal institution" is entitled to certain diminutions of sentence for good behavior, and that he "is eligible for parole only after the expiration of his minimum sentence, diminished as provided by this section." However, R. C. 2967.19 applies only to persons "confined in a state *penal* institution." (Emphasis added.) It does not apply to limit the Authority's power to parole reformatory inmates. In fact, the statutes frequently distinguish between penal institutions and reformatory institutions.[4]

The question of whether eligibility for parole is different for reformatory inmates than for inmates of penitentiaries was considered by the Attorney General of Ohio in a 1970 opinion. The Attorney General, in No. 70-068, *supra*, relied upon the language in R. C. 2967.19 which limits its application to persons "confined to penal institutions" in ruling that reformatory inmates "become legally eligible for parole in accordance with criteria established by the Ohio Adult Parole Authority." The Court

---

[4]See, *e. g.*, R. C. 2967.20 (transfer of prisoners); R. C. 2967.21 (providing for no change of sentence upon transfer); R. C. 2967.01(A) (defining "state penal or reformatory institution"); R. C. 2967.01(E) (defining "parole"); R. C. 2967.26; (furloughs for employment or education); various sections in R. C. Chapter 5147 (governing convict labor).

of Appeals disagreed with that opinion.

The decision of the Court of Appeals has no support in the opinions of the Attorney General or in the practice of parole administration for almost half a century; nor is the decision supported by a close reading of the applicable statutes.

We hold the legislative intent is to provide the Authority with broad administrative discretion to permit individualized treatment of young offenders committed for the first time.

The Court of Appeals supported its position by referring to R. C. 5143.05, which states:

"Courts imposing sentences to the reformatory shall make them general, and not fixed or limited in their duration. The term of imprisonment shall be terminated by the Adult Parole Authority, as authorized by Sections 2967.01 to 2967.25, inclusive, of the Revised Code, but the term of such imprisonment shall not exceed the maximum term, nor be less than the minimum term provided for such felony."

However, that statute deals with the "term of imprisonment," a phrase which is defined in an analogous statute, R. C. 5145.01, as "the duration of the state's legal custody and control over a person sentenced * * *." Parole is recognized as a type of legal custody, and, therefore, constitutes a part of a person's "term of imprisonment" within the meaning of R. C. 5143.05. (See *Jones* v. *Cunningham* [1963], 371 U. S. 236.) This definition of parole is clearly established by R. C. 2967.01(E), which states that "legal custody of a parolee shall remain in the Department of Rehabilitation and Correction until a final release is granted by the authority." Read together, R. C. 5143.05 and 2967.01(E) require that the Authority retain *custody* of reformatory inmates for the duration of the minimum sentence, but state no limitation as to the use of parole as a form of custody. Thus, R. C. 5143.05 does not in any way limit the discretion of the Authority to grant parole to a reformatory inmate.

This statutory scheme for correction supports the

opinions of the Attorney General, *supra*, dating back to 1927, that the General Assembly intended different standards of parole eligibility for reformatory inmates than for inmates of penitentiaries, and we so hold.⁵

The need for such an approach was pointed out by the President's Commission on Law Enforcement and Administration of Justice, Task Force Report on Corrections 63 (1967), which criticized requirements of minimum terms prior to parole eligibility, stating that "such requirements ignore the facts of the individual case and can require unnecessary and damaging stays in institutions. While the usefulness of minimum sentences is debated extensively in the adult field, no authoritative body advocates their use for juveniles.'"⁶

For the foregoing reasons, we hold that a person convicted of a felony and sentenced to a reformatory becomes legally eligible for parole in accordance with criteria established by the Ohio Adult Parole Authority. Accordingly, we reverse the judgment of the Court of Appeals.

*Judgment reversed.*

O'NEILL, C. J., HERBERT and W. BROWN, JJ., concur.

CELEBREZZE and P. BROWN, JJ., concur in the judgment.

CORRIGAN, J., concurs in paragraph one of the syllabus, but dissents from paragraph two of the syllabus and the judgment.

---

⁵Indeed, differences in parole eligibility are explicitly recognized by statutes governing transfers between institutions. R. C. 2967.20 provides that prisoners wrongly assigned to either the penitentiary or the reformatory are to be transferred and that "prisoners so transferred are entitled to the same legal rights and privileges as to the term of sentence, diminution of sentence, and parole, as if originally sentenced and committed to the institution to which they have been transferred."

⁶Other states also have statutes permitting parole of reformatory inmates at any time. See Dawson, Sentencing, *supra*, at 224, 236, which describes procedures in Kansas and Wisconsin very similar to those in Ohio.

PAUL W. BROWN, J., concurring. I concur in the court's judgment, reversing the judgment of the Court of Appeals which allowed the writ of prohibition. Although I agree with the rationale upon which the majority bases the second paragraph of its syllabus, I consider that portion of the opinion purely advisory.

My concurrence in the reversal is grounded upon my agreement with respondents' argument that the prosecuting attorney lacked standing to seek this writ of prohibition, for the reason that he has no real interest in the subject matter of the action nor any statutory authority by which to proceed. *State, ex rel. Dallman,* v. *Court of Common Pleas* (1973), 35 Ohio St. 2d 176; *Sierra Club* v. *Morton* (1972), 405 U. S. 727.

It is also clear that the Adult Parole Authority performs an administrative and not a judicial or quasi-judicial function, in considering the eligibility of a reformatory inmate for parole. *McDougle* v. *Maxwell* (1964), 1 Ohio St. 2d 68; *In re Schoengarth* (1967), 66 Cal. 2d 295, 425 P. 2d 200; *Fleischer* v. *Adult Authority* (1962), 202 Cal. App. 2d 44, 20 Cal. Rptr. 603. See also *In re Stewart* (1952), 156 Ohio St. 521, certiorari denied, 344 U. S. 845. A writ of prohibition will not issue unless judicial or quasi-judicial power is to be exercised. *State, ex rel. Lehmann,* v. *Cmich* (1970), 23 Ohio St. 2d 11.

For these reasons, the Court of Appeals erred in failing to deny the writ.

CELEBREZZE, J., concurs in the foregoing concurring opinion.