DECISION
{¶ 1} Relator, David M. Martin, has filed this action requesting that this court issue writs of mandamus and prohibition ordering respondent, Franklin County Child Support Enforcement Agency ("FCCSEA"), to refrain from enforcing its administrative child support order and ordering FCCSEA to correct all records associated with that order to indicate that relator has no current child support obligation, has never been subject to a child support order, and has no child support arrearage.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the writs. (Attached as Appendix A.) No objections to that decision have been filed.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, and based upon an independent review of the evidence, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writs are denied.
Writ of mandamus denied; Writ of prohibition denied.
Petree and Travis, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] David M. Martin, :
 Relator, :
v. : No. 04AP-970
Franklin County Child Support Enforcement : (REGULAR CALENDAR)
Agency and Anthony R. Bond, in his :
capacity as Director, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on April 29, 2005 George C. Georgeff, for relator.
Ron O'Brien, Prosecuting Attorney, and Jeffrey L. Glasgow, for respondents.
In Mandamus and Prohibition
 {¶ 4} Relator, David M. Martin, has filed this writ of action requesting that this court issue writs of mandamus and prohibition ordering respondent Franklin County Child Support Enforcement Agency ("FCCSEA") to refrain from enforcing its own administratively created child support order and ordering FCCSEA to correct all documents and records associated with administrative order number 97AO43418/02 to indicate that relator has no current child support obligation, has never been subject to a child support order, and has no child support arrearage.
Findings of Fact:
 {¶ 5} 1. On May 26, 1996, Sandra Boggs gave birth to Hannah E. Boggs.
 {¶ 6} 2. On July 30, 1997, FCCSEA filed an administrative paternity action for the purpose of determining the parentage of Hannah. The case was identified by administrative order number 97AO43418/02. Relator was the alleged father in this action.
 {¶ 7} 3. Relator appeared, waived any defect in the service of process for the proceedings regarding the establishment of paternity and signed a voluntary agreement for genetic testing. The voluntary agreement provides, in relevant part, as follows:
2. The mother and the alleged father shall be bound by the results of the genetic testing;
* * *
4. If the results of the genetic testing indicate a ninety-five percent (95%) or greater probability that the alleged father is the natural father of the child(ren), the administrative hearing officer of the FCCSEA shall issue an administrative order establishing the existence of the parent-child relationship(s);
* * *
7. If the administrative hearing officer of the FCCSEA determines the parent-child relationship(s) exists between the alleged father and the child(ren), the father assumes the parental duty of support and he may be required to pay child support[.]
 {¶ 8} 4. On September 5, 1997, FCCSEA issued administrative order 97AO43418/02 finding the existence of a parent-child relationship between relator and the child, Hannah. The order advised relator of his right to object to the determination of the existence of the parent-child relationship by bringing an action in the Franklin County Court of Common Pleas and was informed that if he failed to bring such an action within 30 days, the administrative order was final.
 {¶ 9} 5. Relator did not file objections to the administrative determination of the parent-child relationship between himself and Hannah.
 {¶ 10} 6. Thereafter, both the mother and relator completed financial information sheets for purposes of determining relator's child support obligation for Hannah. Relator's form was dated July 3, 1997.
 {¶ 11} 7. A hearing to determine child support was scheduled for October 23, 1997. Both the mother and relator were present at the hearing. Pursuant to the hearing, it was determined that relator would pay $588.56 per month for the support of the child, Hannah. The order was issued November 7, 1997. While relator contends he never received a copy of the order, he does not deny that he was present for the hearing, submitted financial information, and he was aware that a determination was going to be made setting the amount of child support he would be ordered to pay.
 {¶ 12} 8. Subsequent to the determination of relator's child support obligation, FCCSEA filed a complaint in the Franklin County Court of Common Pleas to collect the arrearage of child support obligation owed. The matter was voluntarily dismissed because service had not been made on relator.
 {¶ 13} 9. On October 1, 2002, Hannah was adopted.
 {¶ 14} 10. At that time, FCCSEA determined that relator would no longer be subject to any continuing obligation of support for Hannah; however, relator would remain obligated to pay the child support arrearage accumulated prior to her adoption.
 {¶ 15} 11. Pursuant to relator's affidavit, thereafter, relator brought the instant action alleging that the original determination by FCCSEA that he had a child support obligation of $588.56 was the result of FCCSEA acting manifestly and in excess of its statutory authority in violation of relator's due process rights. Relator seeks a writ of prohibition ordering FCCSEA to refrain from enforcing the child support obligation and a writ of mandamus ordering FCCSEA to correct its records to show that he does not have a child support obligation.
Conclusions of Law:
 {¶ 16} A writ of prohibition is an extraordinary judicial writ, the purpose of which is to restrain inferior courts and tribunals from exceeding their jurisdiction. State ex rel. Tubbs Jones v. Suster
(1998), 84 Ohio St.3d 70. A writ of prohibition is customarily granted with caution and restraint, and is issued only in cases of necessity arising from the inadequacy of other remedies. Id. In order to be entitled to a writ of prohibition, relator must establish that: (1) respondent is about to exercise judicial or quasi-judicial powers; (2) the exercise of the power is unauthorized by law; and (3) the denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists. State ex rel. Henry v. McMonagle (2000),87 Ohio St.3d 543.
 {¶ 17} Respondent argues that FCCSEA is neither a judicial nor quasi-judicial body and that a writ of prohibition could never be issued against it. However, this magistrate disagrees. In State ex rel. McKeev. Cooper (1974), 40 Ohio St.2d 65, this court had granted a writ of prohibition where a prisoner had alleged that the Ohio Department of Rehabilitation and Correction was about to hold a parole hearing for the prisoner prior to the expiration of his statutory minimum sentence. On appeal, the Supreme Court of Ohio found that the General Assembly intended different standards of parole eligibility for reformatory inmates compared to penitentiary inmates and denied the requested writ of prohibition; however, the court did note that prohibition could have been granted inasmuch as the respondents were about to exercise judicial or quasi-judicial power by holding a hearing. The court concluded that the act of holding a hearing to decide whether someone should be granted parole constitutes the exercise of judicial or quasi-judicial power and is precisely the act which a judge performs in pronouncing sentence and the hearing itself results in decisions which effect fundamental rights of the prisoner.
 {¶ 18} In the present case, FCCSEA is holding hearings to determine both the existence of parent-child relationships as well as determining child support awards and issuing orders which people, like relator, are obligated to follow and which affects substantial rights. As such, initially, the magistrate finds that an action in prohibition can be maintained against FCCSEA.
 {¶ 19} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28. For the reasons that follow, this magistrate finds that there is specific statutory authority for FCCSEA to issue the support order of November 7, 1997, and that relator's request for writs of mandamus and prohibition should be denied.
 {¶ 20} R.C. Chapter 3111 relates to parentage. In the present case, it is undisputed that both the mother and relator consented to genetic testing for the purposes of determining whether relator was the natural father of Hannah and whether a parent-child relationship existed between the two. Furthermore, both relator and the mother agreed to be bound by the results of genetic testing.
 {¶ 21} R.C. 3111.21, in effect at the relevant time period, applied where the parties agreed to be bound by the results of genetic testing and provided, in relevant part, as follows:
(A)(1) If the alleged father and the natural mother of a child both sign a voluntary agreement to genetic testing stating that they agree to be bound by the results of genetic testing * * * and if they file the agreement with a child support enforcement agency, the administrative officer shall schedule a date and time for the mother, the child, and the alleged father to submit to genetic testing * * *. If the natural mother and the alleged father both sign a voluntary agreement to genetic testing, all of the following apply:
If the results of the genetic testing show a ninety-five per cent or greater probability that the alleged father is the natural father of the child, the administrative officer of the agency shall issue an administrative order that the alleged father is the father of the child who is the subject of the proceeding.
* * *
(2) The mother or the alleged father of a child may object to any administrative order issued by an administrative officer pursuant to division (A) of this section by bringing an action to determine the existence or nonexistence of a parent and child relationship in the juvenile court of the county in which the child or the guardian or legal custodian of the child resides. The action shall be brought within thirty days after the date the administrative order is issued. If neither the mother nor the alleged father brings an action to object to the administrative order, the administrative order is final and enforceable by a court.
(B) If an administrative officer issues an administrative order pursuant to division (A)(1)(a) of this section, the administrative officer shall schedule an administrative hearing to determine, in accordance with sections 3111.23 to 3111.29 and 3113.215 [3113.21.5] of the Revised Code, the amount of child support either parent is required to pay and the method of paying that child support. The hearing shall be held not later than sixty days after the issuance of the administrative order nor earlier than thirty days after the officer gives the mother and father of the child notice of the action. When an administrative officer issues an administrative order for the payment of support, all of the following apply:
(1) An administrative order for the payment of support ordinarily shall be for periodic payments that may vary in amount. * * *
(2) The administrative order for the payment of support shall include a notice stating that the mother or the father may object to the administrative order by bringing an action for the payment of support under section 2151.231 * * * no later than thirty days after the date of the issuance of the administrative order requiring the payment of child support, and that, if neither the mother nor the father brings an action for the payment of support within that thirty-day period, the administrative order requiring the payment of support is final and enforceable by a court and may be modified and enforced only in accordance with sections 3111.20 to 3111.28 and 3113.21 to 3113.219
[3113.21.9] of the Revised Code.
 {¶ 22} The genetic testing indicated that there is a 99.94 percent probability that relator is the father of the child, Hannah. As such, R.C. 3111.21(A)(1)(a) applied. It is undisputed that relator did not object to the administrative order determining the existence of the parent-child relationship. Pursuant to R.C. 3111.21(B), a hearing was scheduled to determine the amount of child support either parent was required to pay and the method of paying that child support. The hearing was held within 60 days and both the mother and relator were present. Following that hearing, an administrative order for the payment of support was issued. R.C. 3111.21(B)(2) provides that the administrative order requiring the payment of child support is final and enforceable by a court.
 {¶ 23} Relator makes two arguments with respect to why the above-cited statute does not create a legally enforceable order. First, relator contends that respondent cannot show that it complied with R.C. 3111.20
through 3111.28 and second, that the case of Rieger v. Rieger, Lorain App. No. 02CA008035, 2002-Ohio-6991, stands for the proposition that FCCSEA does not have the authority to administratively create a child support order. For the reasons that follow, the magistrate rejects relator's arguments.
 {¶ 24} First, relator is incorrect to state that the action taken by FCCSEA does not comply with the other relevant statutes, R.C. 3111.20 and3111.28. R.C. 3111.20 provides definitions relative to the establishment of a parent-child relationship and defines the parental duty of support. Pursuant to subsection (C), a party may request that the existence of a parent-child relationship between the presumed natural father and the child be determined. Furthermore, it provides that the administrative officer can issue an order pursuant to division (D) if an agreement to be bound by the results of genetic testing is signed. Thereafter, pursuant to division (D), the administrative officer schedules a hearing to determine the amount of child support required to be paid and provides further, as follows:
* * * When an administrative officer issues an administrative order for the payment of support, all of the following apply:
(1) An administrative order for the payment of support ordinarily shall be for periodic payments that may vary in amount. * * *
(2) The administrative order for the payment of support shall include a notice stating that the mother or the father may object to the administrative order by bringing an action * * * in the juvenile court of the county in which the child or the guardian or legal custodian of the child resides * * * no later than thirty days after the date of the issuance of the administrative order requiring the payment of child support, and that, if neither the mother nor the father brings an action for the payment of support within that thirty-day period, the administrative order requiring the payment of support is final and enforceable by a court and may be modified and enforced only in accordance with sections 3111.20 to 3111.28 and 3113.21 to 3113.219
[3113.21.9] of the Revised Code.
 {¶ 25} The above-quoted language is identical to the language in R.C. 3111.21 which applied in the present case.
 {¶ 26} R.C. 3111.22 provides for requests for the administrative determination prior to a paternity action, the hearing, and paternity in support orders. As with R.C. 3111.20, pursuant to 3111.22(C)(1), the mother and the alleged natural father can voluntarily sign an acknowledgement of paternity or agree to be bound by the results of genetic testing. Once the existence of the parent-child relationship has been shown to exist, R.C. 3111.22(A)(5)(c) provides that:
* * * [A]n administrative officer issues an administrative order determining the existence of a parent and child relationship between the alleged father and the child, the administrative officer shall schedule an administrative hearing to determine * * * the amount of child support any parent is required to pay and the method of payment of child support * * * no later than sixty days after the date of the issuance of the order * * *.
(d) The mother or the father may object to the administrative order by bringing an action for the payment of support * * * in the juvenile court of the county in which the child or the guardian or legal custodian of the child resides * * * no later than thirty days after the date of the issuance of the administrative order requiring the payment of child support. If neither the mother nor the father brings an action for the payment of support within that thirty-day period, the administrative order requiring the payment of support is final and enforceable by a court and may be modified and enforced only in accordance with sections 3111.20 to3111.28 and 3113.21 to 3113.219 [3113.21.9] of the Revised Code.
 {¶ 27} The language is identical to R.C. 3111.21, under which FCCSEA acted.
 {¶ 28} R.C. 3111.23 provides for administrative orders for withholding or deduction from personal earnings, workers' compensation payments, public retirement system benefits or other sources of income of the obligor. Division (A)(1) specifically provides as follows:
If an administrative officer of a child support enforcement agency issues an administrative support order under section * * * 3111.21 * * * of the Revised Code, the agency shall require the withholding or deduction of an amount of the wages or assets of the obligor in accordance with division (B) of this section to ensure that withholding or deduction from the wages or assets of the obligor is available from the commencement of the administrative support order for the collection of the support and any arrearages that occur. The agency shall determine the specific withholding or deduction requirements applicable to the obligor under the administrative support order in accordance with division (B) of this section and shall include the specific requirements in the notices described in division (A)(2) and (B) of this section. * * *[1]
 {¶ 29} Nothing in R.C. 3111.23 conflicts with the actions taken by FCCSEA in the instant case pursuant to R.C. 3111.21. Furthermore, not only does Chapter 3111 provide FCCSEA with the authority to determine the parent-child relationship and to issue support orders, it also provides FCCSEA with the authority to issue orders requiring the withholding or deduction of amounts from the obligor's wages or assets.
 {¶ 30} R.C. 3111.241 provides FCCSEA with the authority to request the juvenile court of the county in which the agency is located to find the obligor in contempt for failure to comply with its administrative orders. R.C. 3111.25 and 3111.28 provide that an employer is liable for its failure to comply with an order of FCCSEA to withhold money from an obligor's wages. Nothing in those two code provisions conflicts with the order in the present case issued under R.C. 3111.21. R.C. 3111.27
provides for review of support orders and modification. Pursuant to division (A), the department of human services is required to adopt rules in accordance with R.C. Chapter 119 establishing a procedure for determining when existing administrative support orders should be reviewed to determine whether it is necessary or in the best interest of the child who is the subject of the administrative support order to modify the administrative support order. Those rules were to be put into place no later than May 1, 1992. Ohio Adm. Code 5101:1-32-15 was put into effect and provides the procedures to be followed for the periodic review of administrative support orders established within the local child support agency. Pursuant to division (B)(1):
The basis for the review for modification of administrative support orders shall be the "Ohio Child Support Guidelines" as is described in section 3113.215 of the Revised Code. The CSEA shall use the guidelines as a rebuttable presumption in the review for modification of administrative support orders. The CSEA shall not deviate from the use of the basic child support schedule and applicable worksheet when calculating a revised amount of child support. * * *
* * *
(C) The CSEA must respond to a written request for a review of an administrative support order by notifying the parties of a scheduled review or that a review is not warranted and reason(s) thereof within five working days of receiving the request.
(1) For those cases in which there is an assignment in effect, a review must be conducted every thirty-six months from the establishment of the administrative order or the date of the most recent review except the review need not be conducted if it has been determined and documented in the IV-D case file that a review would not be in the best interest of the child and neither party has requested a review.
(2) In those cases in which there is no assignment, a review of the order shall take place only at the request of either party and no less frequently than thirty-six months after the establishment of the order or the most recent review.
 {¶ 31} As indicated above, FCCSEA is required to utilize the Ohio Child Support Guidelines as described in R.C. 3113.215 as a rebuttable presumption in the review for modification of administrative support orders. Deviation from the Ohio Child Support Guidelines can only be made if it is in the best interest of the child. Unless a party requests a review, orders are to be reviewed every 36 months from the establishment of the administrative order or the date of the most recent review. There is no evidence in the present case and relator does not argue that the Ohio Child Support Guidelines were not complied with. Furthermore, nothing in R.C. 3111.27 nor Ohio Adm. Code 5101:1-32-15 was ignored or not complied with when the order issued herein was issued under R.C.3111.21.
 {¶ 32} Based upon the above review of the relevant statutes, the magistrate finds that relator's argument that FCCSEA's child support order did not comply with the above-cited statutes lacks merit. Furthermore, contrary to relator's assertion, the above-cited statutes do not require that the administrative order be reviewed and/or adopted by a trial court prior to it becoming effective.
 {¶ 33} Relator also contends that R.C. 3113.216 was violated and that, pursuant to the Rieger decision, FCCSEA did not have authority to administratively create a child support order. For the following reasons, the magistrate disagrees.
 {¶ 34} R.C. 3113.216 provided, in relevant part, as follows:
(B) No later than October 13, 1990, the department of human services shall adopt rules pursuant to Chapter 119. of the Revised Code establishing a procedure for determining when existing child support orders should be reviewed to determine whether it is necessary and in the best interest of the children who are the subject of the child support order to change the child support order. The rules shall include, but are not limited to, all of the following:
* * *
(2) Procedures for determining what child support orders are to be subject to review upon the request of either the obligor or the obligee or periodically by the child support enforcement agency administering the child support order;
(3) Procedures for the child support enforcement agency to periodically review and to review, upon the request of the obligor or the obligee, any child support order that is subject to review * * *;
(4) Procedures for giving obligors and obligees notice of their right to request a review of a child support order that is determined to be subject to review * * *[.]
 {¶ 35} Pursuant thereto, Ohio Adm. Code 5101:1-30-403 was promulgated providing for review and modification of IV-D child support orders. Ohio Adm. Code 5101:1-30-403 provides, in relevant part, as follows:
(2) The basis for the review for modification of all child support orders in effect under the child support enforcement program shall be the "Ohio Child Support Guidelines". The CSEA shall use the guidelines as a rebuttable presumption in the review for modification of IV-D orders. * * * In all IV-D cases if a review indicates that an adjustment is appropriate, using the basic child support schedule, the CSEA must proceed with the modification.
* * *
(B) With the effective date of this rule, each CSEA must notify each party subject to IV-D child support orders under its jurisdiction of the right to request a review by the CSEA of the child support order. * * *
The CSEA shall respond to all written requests for a review of each IV-D order under its jurisdiction and, if appropriate, initiate action to modify in accordance with the "Ohio Child Support Guidelines."
(1) The CSEA shall review assigned orders that were established prior to the effective date of this rule. These cases shall be targeted for review and adjusted, if appropriate under the guidelines * * *.
(2) The CSEA shall review one thirty-sixth or more of its assigned caseload per month until all cases have been reviewed and adjusted, if appropriate. * * *
(3) All IV-D cases shall be reviewed at the request of either parent * * *.
(4) The CSEA must respond to a written request for a review of the child support order by notifying the parties of a scheduled review or that a review is not warranted and the reason(s) thereof within five working days of receiving the request.
(5) Obligors in non-IV-D cases shall sign an application to request a review for modification. * * * * * *
(C) On or before October 13, 1993, the CSEA shall send a one-time notice to each parent subject to IV-D orders under its jurisdiction informing them of the right to request a review of the child support order. The notice must provide the parents with the procedures for requesting a review of the child support order.
(1) Effective October 13, 1993 for those cases in which there is an assignment in effect, a review must be conducted every thirty-six months from the establishment of the order or the date of the most recent review except the review need not be conducted if it has been determined and documented in the IV-D case file that a review would not be in the best interest of the child and neither party has requested a review.
 {¶ 36} In the present case, relator has not alleged nor established that this particular case is an IV-D case which FCCSEA was required to review. Furthermore, pursuant to division (C)(1), reviews are to be conducted every 36 months from the establishment of the order unless it has been determined that a review does not need to be conducted. Again, the provisions of both Ohio Adm. Code 5101:1-32-15 and 5101:1-30-403 pertain to the requirement that child support obligations comply with the Ohio Child Support Guidelines and that any deviations therefrom are demonstrated to be in the best interest of the child. Relator has made no such allegations in the present case. Instead, relator cites the Rieger
case and argues that the Ninth District Court of Appeals has applied R.C. 3113.216 to such an extent that FCCSEA does not have authority to administratively create a child support order where none exists. For the following reasons, this magistrate disagrees.
 {¶ 37} In Rieger, the parties, Anita and David, were granted a decree of divorce on December 8, 1999. Within that decree, the trial court approved and adopted the parties' shared parenting plan and found that it was in the best interest of the child that no child support order be made against either party for support of the child. At David's request, the Lorain County Child Support Enforcement Agency ("CSEA") initiated child support proceedings and determined that Anita should pay child support to David in the amount of $406.34 per month. Anita appealed and an administrative hearing was held wherein Anita's objections to CSEA's findings were denied. Thereafter, on June 4, 2001, CSEA petitioned the trial court for an order adopting the agency's administrative findings that Anita pay child support. The trial court adopted CSEA's findings, and Anita filed objections to the court's judgment entry. On March 7, 2002, the trial court entered judgment overruling Anita's objections.
 {¶ 38} Anita appealed and the appellate court found that CSEA did not have any authority to establish a child support order under R.C. 3113.216
where the trial court had declined to create a child support order in the parties' divorce case. The court cited R.C. 3113.216 for the proposition that CSEA is granted authority to review existing child support order and that R.C. 3113.216 does not empower CSEA with the authority to administratively create a child support order where none exists.
 {¶ 39} The court's decision in Rieger does not apply in the present case because this matter did not proceed under R.C. 3113.216. Instead, as stated previously, R.C. Chapter 3111 vests FCCSEA with authority to determine parentage actions and to issue child support orders.
 {¶ 40} Based on the foregoing, this magistrate determines that the issuance of either a writ of mandamus or prohibition would be inappropriate in the present case. First, FCCSEA has jurisdiction to issue the child support order at issue herein and has the authority to enforce that action via contempt of proceeding. As such, prohibition does not lie. Furthermore, FCCSEA is not required to correct its records to show that there is no existing child support order in effect relative to relator. As such, a writ of mandamus would be inappropriate. Accordingly, it is the magistrate's decision that this court should deny relator's requests for writs of mandamus and prohibition.
[1] Division (B) provides for the notice requirements.